Thomas POLACEC, Respondent,

v.

Robert Len VOIGT, Appellant,

Jean KACZOR, Trustee for the heirs at law of Steven Kaczor, decedent, Respondent,

v.

Robert Len VOIGT, Appellant,

Thomas POLACEC, Respondent,

and

Jean Kaczor, Trustee for the heirs at law of Steven Kaczor, decedent, Respondent,

v.

Theodore POLACEC, Respondent.

No. C9-85-1201.

Court of Appeals of Minnesota.

April 22, 1986.

Review Denied June 19, 1986.

Frederick L. Grunke, St. Cloud, for Thomas and Theodore Polacec.

Gerald W. Von Korff, St. Cloud, for Robert Len Voigt.

Martin Berg, Roseau, for Jean Kaczor.

Heard, considered and decided by NIERENGARTEN, P.J., and FORSBERG and LESLIE, JJ.

### OPINION

NIERENGARTEN, Judge.

The jury found appellant 100% at fault for a head-on automobile accident. He appeals claiming the trial court erred in preventing the jury from learning about a settlement between the respondents. He further claims the trial court erred in allowing an accident reconstructionist to testify. We affirm.

### FACTS

Appellant Robert Voigt and respondent Thomas Polacec were both severely injured when Voigt's car collided head-on with Polacec's pick-up truck. A passenger in Voigt's car, Steve Kaczor, died as a result of the accident. Polacec was injured so severely that he has no memory of the accident or the events leading up to it. Kaczor's estate brought suit against both drivers who cross-claimed. The prinicple issue was which vehicle was travelling westerly, passing another vehicle, when the accident occurred. Each party produced an opinion from a reconstruction expert that the other vehicle was in the passing lane. The jury found that Voigt was in the passing lane and judgment was entered finding him 100% at fault.

Shortly before trial Kaczor's estate entered into a *Pierringer* release with Polacec. The trial court barred disclosure of settlement to the jury. Voigt argues that this determination was erroneous because it prohibited him from suggesting to the jury that the testimony of Kaczor's wife that Voigt had told her that he was following his "usual course," west, (which would have him as the passing party) had been

prejudiced by the settlement. Voigt also argues that the trial court erred in allowing an accident reconstructionist to testify.

## ISSUES

1. Did the trial court err in prohibiting disclosure to the jury of the settlement between respondent and appellant's passenger's estate?

2. Did the trial court err in allowing an accident reconstructionist to testify?

## ANALYSIS

1. Appellant relies primarily on *Frey v. Snelgrove,* 269 N.W.2d 918 (Minn.1978), to argue that the trial court erred in not allowing the jury to learn of the settlement between Kaczor and respondent. In *Frey* the supreme court stated "[w]here the settlement and release agreement is executed during trial, the court should usually inform the jury that 'there has been a settlement and release if for no other reason than to explain the settling tortfeasor's conspicuous absence from the court room.'" *Id* at 923 (quoting Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota,* 3 Wm. Mitchell L. Rev, 1, 30 (1977)). However, the court also stated that

> The extent to which a settlement should be disclosed to the jury will vary from case to case and must rest in the sound discretion of the trial court. The goal, of course, must always be to preserve the remaining parties' right to a fair trial under the circumstances.

*Id.* at 922.

Voigt argues that the settlement affected Mrs. Kaczor's objectivity as a witness, making her biased against Voigt because she would only recover additional damages if Voigt were found liable. Voigt adds that disclosure was further mandated when the trial court allowed Kaczor's attorney to tell the jury that his client was a neutral party who did not know what happened and only cared to find the truth.

■ Although the argument may contain some logic if we recognize testimony that is self-serving may not always track with the truth, here we have a situation where Mrs. Kaczor's trial testimony was identical to her deposition testimony given long before the settlement. Consequently, the probative value of the settlement is not as great. *See Johnson v. Heintz,* 73 Wis.2d 286, 243 N.W.2d 815, 825 (1976). Weighed against the possibility of prejudice because the jury might believe that an individual who has settled has admitted liability, the trial court did not err in prohibiting disclosure of the settlement agreement.

2. Voigt next contends that the trial court erred in allowing an accident reconstructionist to testify that Voigt was in the wrong lane even though: (1) the vehicles left no skid marks, (2) the point of collision was not marked, (3) the speed of the passing vehicle was unknown, (4) the wheels of Polacec's pickup were not locked so it could have traveled in any direction, (5) the general orientation of each vehicle was not known exactly, (6) the amount of momentum used by the collapse of the vehicles was an imponderable variable, (7) the reconstructionist assumed rotating vehicles, and, (8) the testimony was based on the assumption of an ending location of Voigt's vehicle which was contradicted by the only eyewitness who recalled its ending location.

Prior to adoption of Rule 702 of the Minnesota Rules of Evidence, the supreme court indicated some lack of enthusiasm for reconstructive experts.

> While no one can predict with any degree of certainty what the gyrations of two automobiles colliding at an angle will be, we believe that jurors of ordinary intelligence are just as capable of reasoning backward from the evidence and making a correct analysis of what happened as is the expert. So much depends on the actions of the drivers of the cars in consciously or instinctively attempting to avoid the collision or to minimize its effects that it is well-nigh impossible to reconstruct the accident from the final resting place of the automobiles.

*Carmody v. Aho,* 251 Minn. 19, 26, 86 N.W.2d 692, 697 (1957).

The adoption of Rule 702 authorizes the court to allow expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue * * *." *See* Minn.R.Evid. 702. The Minnesota Supreme Court has now acknowledged that:

> The trend of the cases in other jurisdictions is to leave the matter to the trial court's discretion, allowing the trial court to admit the accident reconstruction testimony if there is a need for the evidence and if the expert is qualified. Most importantly, this is also the approach contemplated by our recently adopted Rules of Evidence.

*State v. Dewey*, 272 N.W.2d 355, 357 (Minn. 1978).

The record shows Polacec's expert to be eminently qualified and a fact situation that calls for such testimony. The only eye witnesses were admittedly uncertain about what actually happened. The trial court did not abuse its discretion.

### DECISION

We affirm the trial court on all issues.

Affirmed.