**Paul R. BILTZ, Appellant,**

v.

**NORTHWEST AIRLINES, INC., Respondent.**

**No. CO–84–1156.**

Court of Appeals of Minnesota.

Feb. 19, 1985.

William J. Mavity, James G. Ryan, Minneapolis, for appellant.

Robert L. Hobbins, Pamela R. Saunders, Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

SEDGWICK, Judge.

Pilot Paul R. Biltz appeals from a judgment dismissing his claims against Northwest Airlines for denial of sick and medical benefits and for unlawful discharge under the Minnesota Human Rights Act, Minn. Stat. §§ 363.01–363.14 (1976).

### FACTS

Northwest hired Paul Biltz in 1968 as an airline pilot. Biltz has a history of alcohol abuse, having established a periodic heavy drinking pattern in his 20's. In June 1973, Biltz's brother was killed in an aircraft accident. Biltz was devastated by his brother's death and entered a prolonged period of depression. He began to drink to cover his depression.

Thirteen days after his brother's death, Biltz underwent a "proficiency check" in an aircraft simulator at Northwest's request. He failed that test, was temporarily suspended, and scheduled for refresher training. After training, he passed a second proficiency check and returned to duty in July 1973.

Biltz thereafter began training to become a 727 co-pilot first officer. His depression over his brother's death impeded his performance. However, upon the recommendation of a psychiatrist, Northwest allowed Biltz to complete the training. He returned to flight duty as a 727 co-pilot first officer.

In September 1973, Biltz sought out Alcoholics Anonymous and committed himself to a Hennepin County detoxification program for three days. In October, Northwest grounded Biltz and placed him on personal leave after he was diagnosed as having a personality disorder (depression) with secondary alcoholism. Biltz was hospitalized for three weeks and received outpatient therapy. The treatment dealt in part with his alcohol problem, although this was not the exclusive purpose of the treatment. Biltz was recertified in March 1974 with his doctor's approval.

In spring 1974 Biltz was charged with driving while intoxicated and pled guilty to a reduced charge of careless driving. He was ordered to participate in an alcohol safety action project, where his counselor advised Biltz he appeared to be an alcoholic. Biltz did not believe it.

In February 1977, Biltz removed himself from an assigned flight because of a conflict with the captain of the flight. Biltz's supervisor, Captain Nelson, investigated this incident and met with Biltz. Nelson scheduled a routine spot check on Biltz's cockpit performance the next day. Biltz called in sick, removed himself from that flight, and unknowingly missed the line check. Nelson concluded that Biltz's use of sick leave was exceptional and scheduled Biltz for a check up.

Biltz was diagnosed as an alcoholic and told he was unfit for flight duty. The F.A.A. revoked Biltz's first-class medical certificate, and he was grounded in February 1977. Northwest placed Biltz on personal leave, and told him he was not entitled to sick or medical leave according to the terms of his employment contract.

Under terms of the governing pilot contract, alcoholism was not a covered illness for the purposes of medical or sick leave. Northwest's policy was to place pilots diagnosed as alcoholic on a personal leave of absence while they obtained treatment and recovered their medical certification. Such personal leave was renewable indefinitely, so long as the pilot was actively treating the condition and making progress toward recertification. Northwest policy changed in July 1983 to allow pilots to use sick and medical leave for alcoholism rehabilitation.

Biltz rejected the diagnosis of alcoholism and spent a year consulting other doctors to try to refute it. Northwest renewed Biltz's personal leave of absence three times from February 1977 to February 1978. Biltz was examined again by the Northwest doctor in January 1978. This re-examination, which included liver function tests and a liver biopsy, confirmed the diagnosis of alcoholism.

Biltz met with Northwest officials on February 1, 1978 to review his status. He continued to deny his alcoholism and said he had not obtained treatment and had no plans to do so. He asked for additional leave to enable him to further challenge that diagnosis. Biltz was terminated effective February 7, 1978.

On July 13, 1978, Biltz filed a charge of discrimination against Northwest with the Minnesota Department of Human Rights. In 1980 he sued Northwest for violations of the Minnesota Human Rights Act and § 503 of the Rehabilitation Act of 1973, as amended. Northwest removed the case from state court to the federal district court. The federal court dismissed the Rehabilitation Act claim and remanded the case to state court for resolution of the remaining claims.

The case was tried without a jury. The trial court dismissed the complaint with prejudice. Biltz's motion for amended findings or new trial was denied. He appeals the judgment and the order denying new trial.

### ISSUE

Did Northwest's denial of sick and medical leave benefits and subsequent discharge of Biltz violate the Minnesota Human Rights Act, Minn.Stat. §§ 363.01–363.-14 (1976)?

### ANALYSIS

Biltz claims that Northwest discriminated against him because of his alcoholism by refusing to place him on sick or medical leave in February 1977 and by discharging him in February 1978.

*The Denial of Medical Leave Claim*

■ Biltz is not entitled to relief for denial of sick and medical leave, because he filed his Minnesota Human Rights Act claim too late. According to Minn.Stat. § 363.06, subd. 3, a claim of unfair discriminatory practice must be filed within six months after the occurrence of the practice. Northwest denied Biltz's request for sick or medical leave in March 1977. He did not file a charge of discrimination with the Minnesota Department of Human Rights until July 1978.

This case does not present a "continuing violation," for what Biltz suffered in 1978 was only the consequence of Northwest's 1977 decision. The United States Supreme Court held that in Title VII discrimination

cases, the applicable limitations period begins to run when the discriminatory act occurs, not when the consequences of the act become painful. *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6, *rehearing denied,* 454 U.S. 1166, 102 S.Ct. 1042, 71 L.Ed.2d 322 (1982). The trial court properly ruled that this issue is untimely.

*The Discriminatory Discharge Claim:*

■ Although the discriminatory discharge claim was timely, it is unclear whether alcoholism was a covered disability under the 1976 version of the Human Rights Act. In fact, the Minnesota Supreme Court specifically refused to address that question in *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428 (Minn. 1983).

However, we need not address this issue since Northwest had a valid defense to this discrimination claim. The Human Rights Act provides the employer cannot discriminate unless such discrimination is based on a bona fide occupational criteria. Minn. Stat. § 363.03, subd. 1 (1976).

This defense is applicable here. Because Biltz did not have a valid medical certificate after 1977, he did not have the bona fide occupational qualifications for the job. Furthermore, he refused to undergo the treatment to regain his medical certificate. Biltz suffers from a disability which, if untreated, can pose a serious threat to the life of himself and others. It is difficult to think of a more dangerous situation than a non-qualified pilot in charge of a commercial airliner.

Biltz was not qualified to fly at the time of discharge for he had no medical certificate; moreover, he was still actively fighting the diagnosis of alcoholism and told Northwest before his discharge that he had no plans to seek treatment. The record shows that Northwest placed other pilots who were diagnosed alcoholic on personal leave. Many obtained treatment and returned to flight duty. None refused treatment, as did Biltz. Compared to the pilots who obtained treatment, this is an egregious case of inaction. Northwest discharged Biltz due to the lack of a bona fide occupational qualification. This is not discrimination under Minn.Stat. § 363.03 (1976).

## DECISION

The decision of the trial court is affirmed.