Scott HANSEN, infant by his guardian ad litem, Veronica HANSEN, Appellant,

v.

Dr. G.R. SMITH, et al., Respondents.

No. C7–84–2126.

Court of Appeals of Minnesota.

Aug. 20, 1985.

Robert W. Rischmiller, Minneapolis, for appellant.

Robert M. Frazee, Robert E. Salmon, Minneapolis, for respondents.

Heard, considered and decided by SEDG-WICK, P.J., and WOZNIAK and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Veronica Hansen appeals the trial court order denying her a new trial, seeking review of an unfavorable evidentiary ruling made at trial. We affirm.

## FACTS

Following his birth at Hutchinson Community Hospital on July 4, 1971, Scott Hansen was transferred to the hospital nursery. At 11:00 p.m. that evening when night nurse Mott began her shift, she was told that during the previous shift mucus had been suctioned from Scott's air passage. At 11:00 a.m. she suctioned blood-tinged mucus from Scott's air passage. She did not inform Scott's doctor.

At 1:00 a.m. when she next checked on Scott, Nurse Mott found him cyanotic, limp, pupils dilated, in respiratory arrest. He was resuscitated but suffered permanent brain damage and will need 24-hour care for the rest of his life.

Hospital staffing procedures did not provide for continuous staffing in the nursery. It is undisputed that Scott's parents were not informed by the physician or the hospital that newborns could be left unattended for periods of time.

Hutchinson Community Hospital, a small hospital, had 21 patients, including two newborns and two mothers in the obstetrics ward, at the time Scott was born, and was staffed by two nurses, an LPN, and a nurses aide.

Appellant Veronica Hansen initially commenced a medical malpractice action against Nurse Mott and the Hutchinson Community Hospital based on negligent failure to provide necessary nursing care, observation and treatment. On September 28, 1982, appellant amended her complaint to add as party defendants her attending physician, Dr. G.R. Smith, and the clinic to which he belonged, the Hutchinson Medical Center, based on negligent nondisclosure.

Appellant claimed that the relevant standard of care would have required that Dr. Smith advise Mr. and Mrs. Hansen that the hospital did not provide 24-hour supervision of the hospital nursery. Dr. Smith admitted that he had not informed appellant, but claimed his failure to inform was not negligent and did not violate the standard of care.

Prior to trial, the defendant nurse and defendant hospital settled their negligent treatment claims on a *Pierringer* basis. The trial proceeded to a jury verdict with the sole claim against respondents being negligent nondisclosure.

The jury, by special verdict, found damages of $200,000.00, but found that Dr. Smith was not negligent in failing to disclose to the parents that the hospital's newborn nursery did not provide continual nursing surveillance for newborn babies. The trial court entered judgment for defendants.

Following the defense verdict, appellant made a motion for a new trial based on an adverse evidentiary ruling made during the trial, which was denied. That ruling is the basis for this appeal.

Approximately midway through the week-long trial, during cross-examination of Dr. Smith, appellant's attorney asked Dr. Smith if he had ever lied under oath. Respondent replied, "Not to my knowledge." Appellant's attorney then attempted to impeach him using a deposition respondent had given approximately eighteen months before on February 23, 1983, in an unrelated lawsuit based on respondent's negligent treatment of different plaintiffs. In the deposition respondent was asked if he had ever been involved in a lawsuit before. Respondent answered that he had not. The deposition was taken when this lawsuit (*Hansen v. Smith and Hutchinson Medical Center*) was pending. Appellant claimed that Dr. Smith had answered falsely in that deposition and, thus, his negative answer during cross-examination to the question whether he had ever lied under oath was also false.

After appellant's attorney elicited the answer in this case from respondent that he had never lied under oath, appellant attempted to impeach him with the February, 1983, deposition. After respondent's objection the trial court ruled that appellant could not go forward with the impeachment. Appellant made an offer of proof in chambers.

The trial court based its ruling on Rule 608(b) Minn.R.Evid., holding that the 1983 deposition was on a collateral matter and, as extrinsic evidence, could not be used to attack respondent's credibility. In chambers appellant argued that the court could, in its discretion, allow this collateral impeachment as probative of respondent's truthfulness. The court ruled in excluding the evidence that, under Rule 403 Minn.R. Evid., even if the offered impeachment was relevant, its probative value was substantially outweighed by the danger of unfair prejudice and possible confusion to the jury.

## ISSUE

Did the trial court err in excluding appellant's impeachment evidence?

## ANALYSIS

Appellant argues use of the deposition is permissible, under Rule 608(b) Minn.R. Evid., because probative of respondent's truthfulness. She claims the statements are relevant because they are not remote in time. She argues the trial court, by refusing to allow the testimony, deprived the jury of trustworthy evidence necessary to judge respondent's credibility.

Appellant argues the deposition, though evidence in an unrelated lawsuit, is probative of respondent's truthfulness, and, thus, admissible under the Rules of Evidence:

*Specific instances of conduct. Specific instances of the conduct of a witness for the purpose of attacking or supporting his credibility*, other than conviction of crime as provided in rule 609, *may not be proved by extrinsic evidence.* They may, however, *in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness* (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Rule 608(b) Minn.R.Evid. (emphasis added).

Rule 608(b) must be examined in view of its prohibition on attacking a witness' credibility with extrinsic evidence, as well as its provision recognizing the court's discretion to allow cross-examination concerning a witness' character for truthfulness.

■ Clearly the offered impeachment was collateral. The test of collaterality is whether the cross-examining party would be entitled to prove the fact as part of his case tending to establish his cause of action. *Harden v. Seventh Rib, Inc.*, 311 Minn. 27, 30, 247 N.W.2d 42, 44 (1976). Without a discretionary ruling by the trial court, the cross-examining party (appellant) would not have been entitled to prove the existence of the 1983 deposition as part of her case, as it is in no way necessary to establish her cause of action.

In chambers, the trial court referred to Rule 403, Minn.R.Evid. and decided, exercising its discretion, not to allow the proposed impeachment. The court found the prejudicial impact of the collateral testimony, even if relevant, would outweigh its probative value. Further, the evidence would distract the jury from the legitimate issue before it, the alleged malpractice.

■ When reviewing evidentiary rulings, we must determine whether the trial court has abused its discretion. *Harden v. Seventh Rib., Inc.*, 311 Minn. 27, 32, 247 N.W.2d 42, 45 (1976), *Jensen v. Touche Ross*, 335 N.W.2d 720, 725 (Minn.1983). In Minnesota, before an error in the exclusion of evidence may be grounds for a new trial, it must appear that such evidence might reasonably have changed the result of the trial if it had been admitted. *Poppenhagen v. Sorenson*, 300 Minn. 73, 79, 220 N.W.2d 281, 285 (1974); *Renne v. Gustafson*, 292 Minn. 218, 223, 194 N.W.2d 267, 270 (1972).

■ Appellant contends respondent's truthfulness is "paramount, crucial, and decisive," because he testified to "important facts." Since the facts were undisputed, we do not see how proof of respondent's

possible untruthfulness in an unrelated deposition could have changed the result of this trial. Appellant's only claim was negligent nondisclosure, and respondent admitted he had not made the disclosure. His defense was limited to expert testimony that he had not violated the applicable standard of care in effect in that area in 1971. His ability to recall or to tell the truth was not in issue.

■ We recognize the seriousness of the injury to appellant's son. Permanent brain damage and the necessity of 24-hour care for the rest of his life is a tragedy that can never be fully compensated. However, we hold that the trial court did not err in its evidentiary ruling.

### DECISION

The trial court did not err in excluding appellant's impeachment evidence.

Affirmed.