**June Ann RIPKA, Respondent,**

v.

**Marie Sire MEHUS, Appellant.**

**No. C5–86–301.**

Court of Appeals of Minnesota.

July 29, 1986.

William R. Sieben, Peter Berge, Schwebel, Goetz, Sieben & Hanson, Minneapolis, for respondent.

Lee L. La Bore, Emilio R. Giuliani, Jr., Hopkins, for appellant.

Heard, considered, and decided by PARKER, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

WOZNIAK, Judge.

Plaintiff June Ripka was injured in an automobile accident on August 20, 1982. She brought this action against the driver of the other car, Marie Mehus. By special verdict, the jury found that defendant was 83% negligent, that plaintiff was 17% negligent, and that plaintiff had suffered damages in the amount of $64,000. Defendant's post-trial motion for a remittitur in the amount of $30,000 or, in the alternative, a new trial, was denied. Judgment in the amount of $53,120 (83% of $64,000) was entered against defendant. Defendant appeals from the judgment. We affirm.

## FACTS

The accident occurred at the intersection of Oakland Avenue and 26th Street in Minneapolis. Plaintiff was westbound on 26th Street, a major artery in south Minneapolis. Defendant was traveling north on Oakland, a smaller side street controlled by a stop sign. Plaintiff had the right of way. A group of street department workers was doing construction work at the intersection. Several construction vehicles were parked in the area. Defendant stopped at the stop sign where, according to her testimony, she waited for a long time because the construction vehicles and signs obscured her vision. Eventually, she testified, one of the construction workers waved her through. Plaintiff's car struck defendant's as defendant pulled out into the intersection.

At trial, plaintiff presented the deposition testimony of her treating physician, Dr. Steven Noran, and her treating chiropractor, Dennis Waggon. Both testified that she had sustained a permanent injury. Dr. Robert Stoltz saw plaintiff for an adverse examination. His deposition testimony was presented at trial. Dr. Stoltz testified that there was no permanent injury.

On cross-examination by plaintiff's counsel, Dr. Stoltz admitted that he had taken and failed the examinations for board certification in neurology and that, while under oath in two unrelated cases, first in 1980 and again in 1982, he had testified that he never took the examinations. Neither plaintiff's counsel on cross nor defendant's counsel on redirect sought clarification of when Dr. Stoltz took the examinations. Plaintiff states on appeal that he took and failed them in the 1950's. During closing argument, plaintiff's counsel made repeated references to the fact that Dr. Stoltz had lied about his qualifications in other proceedings.

Defendant also assigns as error the trial court's refusal to submit to the jury for apportionment the alleged negligence of the unidentified workman who she alleges waved her through the intersection.

## ISSUES

1. Did the trial court abuse its discretion in admitting, for impeachment purposes, evidence that defendant's expert had lied about his qualifications in two unrelated actions?

2. Did the trial court abuse its discretion in failing to submit to the jury the negligence of an unknown third party?

## ANALYSIS

■ 1. Defendant argues that Dr. Stoltz's prior statements regarding his qualifications are collateral to the issues in this lawsuit and therefore irrelevant and immaterial. Rulings on the materiality or relevance of evidence are committed to the sound discretion of the trial judge and will only be grounds for reversal where that

discretion was clearly abused. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983).

Minnesota Rule of Evidence 608(b) provides that specific instances of conduct of a witness:

> may, * * * in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness * * *.

Minn.R.Evid. 608(b). The committee comment to Rule 608(b) states:

> It is permissible to impeach a witness on cross-examination by prior misconduct if the prior misconduct is probative of untruthfulness. * * * However, because this is deemed an inquiry into a collateral matter the cross-examiner may not disprove an answer by extrinsic evidence.

*Id.* committee comment.

The impeachment evidence was clearly collateral. The test of collaterality is whether the cross-examiner would be entitled to prove the fact as part of his case tending to establish his cause of action or defense. *Harden v. Seventh Rib, Inc.*, 311 Minn. 27, 30, 247 N.W.2d 42, 44 (1976). As a general rule, the credibility of a witness is not impeached merely by showing that he was mistaken in his observation or recollection of a collateral fact which is immaterial or irrelevant to the issues of the pending suit and which is so remote in time and circumstance as to have no bearing on his credibility. *Cormican v. Anchor Casualty Co.*, 249 Minn. 196, 81 N.W.2d 782 (1957). Thus, where the credibility of the witness was not at issue, this court has held that the trial court did not abuse its discretion in excluding impeachment evidence where that evidence was more prejudicial than probative. *Hansen v. Smith*, 373 N.W.2d 349, 352 (Minn.Ct.App.1985).

Here, however, the witness' credibility was at issue. Dr. Stoltz's medical testimo-

ny directly contradicted that of plaintiff's experts. Furthermore, the jury could reasonably have found the prior statements regarding his qualifications to be probative of his credibility. Under these circumstances, Rule 608(b) expressly allows the use, subject to the trial court's discretion, of collateral matter for purposes of impeachment. Minn.R.Evid. 608(b) and committee comment. The only limitation is that, if the witness does not admit to the impeachment evidence, the cross-examiner may not disprove the answer by extrinsic evidence. *Id.; State v. Nelson*, 148 Minn. 285, 296, 181 N.W. 850, 855 (1921).

Defendant argues that because there was no evidence as to the date Dr. Stoltz took and failed the examinations, there is no evidence that he lied, because he might conceivably have taken the examinations after he was asked the questions in the prior litigation. Defendant produced no evidence that this was in fact the case, and did not ask Dr. Stoltz on redirect when he took the examinations. Impeachment is permissible by reasonable inference. If Dr. Stoltz had an explanation for the apparent falsehood, it was the right of defendant's counsel to bring it out on redirect.

Defendant argues that the impeachment evidence was more prejudicial than probative within the meaning of Minn.R.Evid. 403,[1] particularly in light of the repeated references to it by plaintiff's counsel in closing argument.

The Minnesota Supreme Court has expressly stated that "[t]he fact that appellant had lied under oath prior to trial should be considered a relevant fact that bears on his credibility as a witness." *King v. All-American, Inc.*, 309 N.W.2d 62, 63 (Minn.1981). It cannot be argued that the probative value of this evidence, in and of itself, was outweighed by the danger of unfair prejudice or confusion under Rule 403.

---

1. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Minn.R.Evid. 403.

As the trial court acknowledged in its memorandum, "the extent to which plaintiff's counsel made use of the impeachment in his closing argument, is more troubling." The trial court concluded, however, that when counsel's closing argument is considered in its entirety, and those references are considered in context, they are not so pervasive that they rise to the level of prejudicial error.

Our review of the transcript of plaintiff's counsel's closing argument fully supports this conclusion by the trial court.

■ 2. Defendant contends that the trial court erred in refusing to submit to the jury the alleged negligence of the unknown workman who she alleges waved her through the intersection. In *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978), the court stated that, as a general rule,

If there is "evidence of conduct which, if believed by the jury, would constitute negligence [or fault] on the part of the person * * * inquired about," the fault or negligence of that party should be submitted to the jury. *Connar v. West Shore Equipment of Milwaukee*, 68 Wis.2d 42, 45, 227 N.W.2d 660, 662 (1975).

*Id.* at 923. In the subsequent case of *Lines v. Ryan*, 272 N.W.2d 896 (Minn. 1978), the court quoted more extensively from the *Connar* case, which the court relied on in *Frey:*

" * * * It is established without doubt that, when apportioning negligence, a jury must have the opportunity to consider the negligence of *all parties to the transaction, whether or not they be parties to the lawsuit* and whether or not they can be liable to the plaintiff or to the other tort-feasors either by operation of law or because of a prior release.

\*        \*        \*        \*        \*        \*

"At the requested-special-verdict stage of a lawsuit, it is immaterial that the entity is not a party or is immune from further liability. As pointed out in *Pierringer v. Hoger* (1963), 21 Wis.2d 182,

124 N.W.2d 106, and *Payne v. Bilco Co.* (1972), 54 Wis.2d 424, 195 N.W.2d 641, the apportionment must include all whose negligence may have contributed to the arising of the cause of action." 68 Wis.2d 44, 227 N.W.2d 662.

*Id.* at 902–03 (emphasis added); *see also Hosley v. Armstrong Cork Co.*, 383 N.W.2d 289, 293 (Minn.1986) (reiterating the *Lines* rule).

In *Frey, Connar*, and *Lines*, however, the missing defendants were people or entities whose identities were known. In *Frey*, the missing defendants had settled on *Pierringer* releases. In *Connar*, the missing defendant was immune from suit by operation of the workers' compensation laws. And in *Lines*, the plaintiff brought two separate lawsuits against the other two drivers in a three-car collision. The court held that in each suit the negligence of the two defendants must be apportioned.

Here, defendant argues that the trial court should have submitted to the jury for apportionment the negligence of a "phantom" tortfeasor,[2] the sole evidence of whose existence is the allegations made by defendant. The trial court did not err in refusing to do so. We agree with the trial court that "[d]efendant's testimony that the unknown bystander indicated to her that it was safe to cross the intersection had some relevance to the total circumstances surrounding the accident." We also recognize that a party need only be a "party to the transaction," and not necessarily to the lawsuit, for his or her negligence to be considered by the jury. *Lines*, 272 N.W.2d at 903. However, a mere allegation by the defendant that a phantom tortfeasor contributed to the accident is insufficient evidence to justify submitting the alleged negligence of the phantom tortfeasor to the jury for apportionment.

The Minnesota Supreme Court dealt with an analogous issue in *United States Fidelity & Guarantee Co. v. Fruchtman*, 263 N.W.2d 66 (Minn.1978). In *Fruchtman*,

---

**2.** We use this term because defendant's allegations are reminiscent of the "phantom car" defense which periodically appears in automobile accident cases. *See, e.g., Floen v. Sund*, 255 Minn. 211, 96 N.W.2d 563 (1959).

the court held that a policy definition of a "hit-and-run vehicle," requiring "physical contact" with such a vehicle as a precondition of coverage, was not void as against public policy. The court set forth a justification for this exclusion of coverage for injuries resulting from a phantom vehicle:

The physical contact requirement is designed to prevent fraudulent claims—as where a claimant alleges he has been driven off the highway by another vehicle, when in fact he lost control of his vehicle exclusively through his own negligence * * *.

*Id.* at 73 (quoting A. Widiss, *A Guide to Uninsured Motorist Coverage* § 2.41 at 81).

The Minnesota Supreme Court has not decided the issue whether, under any circumstances, the alleged negligence of an unknown, phantom tortfeasor must be submitted to the jury for apportionment under the Comparative Fault Act and if so, what form or quantum of evidence of the phantom tortfeasor's existence is necessary to create a jury issue. We need not decide this ultimate issue here, however. We simply hold that a mere allegation by the defendant that the phantom tortfeasor existed is insufficient to justify submission to the jury. We believe that the policy considerations expressed in *Fruchtman* are helpful in this context. In addition, we note that it was up to defendant to locate and, if necessary, bring a third party action against any other parties who she alleges were liable to the plaintiff. *See* Minn.R. Civ.P. 14.01.[3]

3. We do not accept the arguments advanced by the plaintiff in support of the conclusion we have reached on this issue. Plaintiff argues that the alleged negligence of the phantom tortfeasor is irrelevant in this case because it does not involve a breach of a duty of care to the plaintiff. This argument obviously fails. One who waves one automobile into the path of another breaches a duty of care to any person injured in a resulting accident. Plaintiff also argues that a contrary ruling by the trial court would not have changed the outcome of the case in any event. According to this argument, any fault assigned to the phantom tortfeasor would have affected only the defendant's share of negligence, not the plaintiff's, and because joint and several liability applies, defendant is liable for

## DECISION

The judgment of the trial court is affirmed.

the entire award anyway. This argument fails for two reasons. First, it is pure speculation whether plaintiff would have done better on the comparative fault question with more defendants in the case. *See Cambern v. Sioux Tools, Inc.,* 323 N.W.2d 795, 799 (Minn.1982). Second, plaintiff overlooks the possibility that the jury, in apportioning fault, might have found defendant less at fault than the plaintiff, even if it found the aggregate fault of both defendants to be greater than that of plaintiff. In such a case, defendant Ripka would have no liability to plaintiff and joint and several liability would not apply. *See* Minn.Stat. § 604.01, subd. 1 (1984) (comparative fault); Steenson, *The Fault With Comparative Fault,* 12 Wm. Mitchell L.Rev. 1, 5 (1986).