**Ernest HENDRICKSON, Appellant,**

v.

**MAGNEY CONSTRUCTION COMPANY, Respondent.**

**No. C1–86–1302.**

Court of Appeals of Minnesota.

March 10, 1987.

David B. Morse, David B. Morse, P.A., Minneapolis, for appellant.

Daniel G. Wilczek, Faegre & Benson, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Ernest Hendrickson commenced this action in December 1982 against his former employer, respondent Magney Construction Company, for discrimination on the basis of disability and age in violation of Minn.Stat. §§ 363.03, subd. 1(2) and 181.81 (1980) and for breach of contract. Trial was bifurcated. The breach of contract claims were tried first to a jury, and the discrimination claims were heard later by the court. This appeal is from two post-trial orders and from the judgment subsequently entered in favor of Magney Construction. We affirm.

## FACTS

Hendrickson was hired by Magney Construction in 1967 when he was 41 years old. He began as a journeyman carpenter, was promoted to a field superintendent and finally to general superintendent, a position requiring him to oversee and travel to various project sites. When his employment ended in November 1980, Hendrickson had worked for the company for 14 years and was 55 years old.

Hendrickson's breach of contract claims are based on promises made by Charles F. Magney, the sole shareholder of the company for certain bonuses, a life insurance policy with a cash value of $100,000, retirement benefits, and profit sharing benefits. Following the first portion of the trial, the jury returned a special verdict awarding Hendrickson $6,016 ($4,000 plus 6% interest) for unpaid bonuses only.

Hendrickson's discrimination claims are based on his allegations that he was fired because of his age and because of a back injury he suffered in August 1980. Following the second portion of the trial, the trial court concluded that Hendrickson had failed to prove a prima facie case of discrimination because he had voluntarily quit his job and because he was no longer able to perform that job.

### ISSUES

1. Was it an abuse of discretion for the trial court to exclude from the jury's consideration certain evidence claimed by Hendrickson to be relevant to the breach of contract claims?

2. Did the trial court err in concluding that Hendrickson's claim for unpaid bonuses is barred by the statute of limitations?

3. Are the trial court's findings and conclusions on the discrimination claims justified by the evidence and not contrary to law?

### ANALYSIS

#### I

In determining the admissibility of evidence, questions of materiality and relevancy rest largely in the discretion of the trial court. *Renne v. Gustafson*, 292 Minn. 218, 223, 194 N.W.2d 267, 270 (1972). To be relevant under Minn.R.Evid. 401, evidence must tend to prove or disprove a fact that is of consequence to the litigation; this concept has traditionally been referred to as materiality. P. Thompson, 11 Minnesota Practice § 401.02, at 102 (1979) (citing C. McCormick, *McCormick on Evidence* § 185, at 437 (E. Cleary 2d ed. 1972)).

Hendrickson moved for a new trial on the grounds that during the breach of contract portion of the trial, the trial court erroneously excluded evidence regarding the termination of his employment and the financial benefit allegedly gained by Magney Construction due to his early termination. Arguably, this evidence is relevant because it tended to prove Hendrickson's theories of recovery and because it furnished background information. Before error in exclusion of evidence may be grounds for a new trial, however, it must appear that such evidence might reasonably have changed the result of trial if it had been admitted. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983); *Hansen by Hansen v. Smith*, 373 N.W.2d 349, 352 (Minn.Ct.App.1985). Thus, if the offered evidence or testimony is only collateral and not material to the main issues, a new trial is not warranted. *Newton v. Minneapolis Street Railway Co.*, 186 Minn. 439, 445, 243 N.W. 684, 687 (1932).

While Hendrickson claims this evidence is relevant to the issue of whether or not a breach occurred, we believe it was only collateral to that issue. The contracts in question here were entered and allegedly breached long before Hendrickson left the employ of Magney Construction. His termination and any financial gain realized by Magney Construction have little bearing on the formation of these contracts or their alleged breaches.

Nor would admission of this evidence have changed the result. In its special verdict, the jury found that although there had been a contract with regard to each of the benefits claimed by Hendrickson, in only one instance (that of unpaid bonuses) did it find that the contract had been breached by Magney Construction. These conclusions are fully supported by other evidence, which establishes that Hendrickson did in fact receive many bonuses, substantial payments from a retirement and profit sharing plan, and the option to continue paying premiums on a $100,000 life insurance policy. Moreover, because the offered evidence clearly establishes that Hendrickson was not fired but that he voluntarily quit, the jury necessarily would have rejected his theories of recovery. Because he voluntarily quit, there was no financial motivation on the part of Magney Construction to either terminate him or to not pay him promised benefits.

#### II

Hendrickson argues that the trial court erred in determining that his claim for un-

paid bonuses was barred by the statute of limitations and in granting Magney Construction's motion for judgment notwithstanding the verdict with respect to the jury's award of $6,016.

■ The award represents unpaid bonuses for work performed and completed in 1976 and 1977. Although Hendrickson contends that these unpaid bonuses were the subject of continuing discussions between the parties, the evidence clearly establishes that these bonuses were not discussed after 1977. Hendrickson's cause of action thus accrued no later than 1977. *See Dalton v. Dow Chemical Co.*, 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968).

Hendrickson took no action until April 1981, when he filed an administrative complaint with the Minnesota Department of Human Rights. After withdrawing that administrative complaint, Hendrickson commenced this action in December 1982. The applicable limitations period for actions on wages and related claims, including bonus payments, is two years. Minn.Stat. § 541.-07(5) (1982). The statute was amended in 1984 to include a three-year limitation period for willful nonpayment. *See* 1984 Minn. Laws ch. 608, § 4. Under either version of the statute or under either limitation period, Hendrickson's claim for unpaid bonuses would be barred; we need not determine which applies.

### III

■ Finally, Hendrickson contends that the evidence does not support the trial court's findings and conclusions rejecting his claims of discrimination on the basis of age and disability. We disagree. The testimony given by Magney and other former employees was consistent and fully supports the trial court's finding that Hendrickson voluntarily terminated his employment, even though Magney offered him a different position more suited to his physical abilities with no loss of salary or benefits. The findings regarding the extent of Hendrickson's disability are supported by Hendrickson's own admissions that he was physically unable to perform the duties of his job due to his back injury.

■ In turn, these findings support the conclusions drawn by the trial court. Because Hendrickson voluntarily terminated his employment and did not show that he was actually or constructively discharged, he failed to prove a prima facie case of discrimination. *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 442 (Minn.1983); *Shea v. Hanna Mining Co.*, 397 N.W.2d 362, 368 (Minn.Ct.App.1986). Even assuming discharge, Hendrickson failed to show that he possessed the qualifications necessary for the general superintendent position because his injury precluded him from performing the tasks required by that job. *See Biltz v. Northwest Airlines, Inc.*, 363 N.W.2d 94, 97 (Minn.Ct. App.1985) (airline did not discriminate against pilot who refused to seek treatment for alcoholism and therefore did not possess bona fide occupational criteria for the job); Minn.Stat. § 363.03, subd. 1 (1980).

### DECISION

Affirmed.