PIERRINGER, Plaintiff, v. HOGER and others, Defendants. HOGER and another, Plaintiffs, v. MILWAUKEE GAS LIGHT COMPANY and others, Defendants.

*October 1—October 29, 1963.*

For the defendant-appellant there was a brief by *Kivett &
Kasdorf* of Milwaukee, and *Stuart G. Grady* of Port Wash-
ington, and oral argument by *A. W. Kivett.*

For the defendant-respondent Milwaukee Gas Light Com-
pany there was a brief by *Foley, Sammond & Lardner,* and
oral argument by *Harrold J. McComas,* all of Milwaukee.

For the defendant-respondent Stoelting Brothers Company there was a brief by *Wickham, Borgelt, Skogstad & Powell* of Milwaukee, and oral argument by *Arthur Wickham.*

For the defendant-respondent Lester Olsen there was a brief by *George D. Young* of Milwaukee, joined in by *Erwin N. Pauly* of Port Washington, for the plaintiff Loschel Pierringer, and oral argument by *Mr. Young.*

There was a brief by *Ray T. McCann* and *Laurence Collins,* both of Milwaukee, for the plaintiffs-respondents Burton E. Hoger and William Bormann; by *Lorinczi & Weiss* of Milwaukee, for the defendant-respondent Burton E. Hoger; and by *Gerold & Huiras* of Port Washington, for the defendant-respondent William Bormann, and *Leonard L. Loeb* of Milwaukee of counsel.

HALLOWS, J.   The releases were executed after the decision in *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105, and are too long to quote verbatim. Each releases and discharges the respondents from all claims and causes of action of the plaintiff and recites the settlement was a compromise of the plaintiff's claims which exceeded the consideration paid and the plaintiff and the respondents knew the respondents were not paying the full amount of the plaintiff's damages. Each release provided the plaintiff "does hereby credit and satisfy that portion of the total amount of damages of the undersigned . . . which has been caused by the negligence, if any, of such of the settling parties hereto as may hereafter be determined to be the case in the further trial or other disposition of this or any other action" and the plaintiff "does hereby release and discharge, that fraction and portion and percentage of his total causes of action and claim for damages against all parties . . . which shall hereafter, by further trial or other disposition of this or any other ac-

tion, be determined to be the sum of the portions or fractions or percentages of causal negligence for which any or all of the settling parties hereto are found to be liable. . . ." The releases also contain a reservation of rights to "the balance of the whole cause of action of the undersigned against the said Mathias Greisch," an indemnification agreement for any amount the respondents may be required to pay upon any judgment obtained against them for contribution and an agreement to satisfy any judgment the plaintiff recovers for the full cause of action against the appellant to the extent of the fraction of the cause of action released. These latter provisions for indemnification and for satisfaction of judgment are no doubt second-line protection for the respondents in the event the other provisions were ineffective. The problem of drafting a release effective in tort actions to carry out the intentions of the parties thereto where all the tort-feasors are not parties is admittedly difficult and on occasion a frustrating task under the case law and statutory law of this state.

The first question presented by the releases under consideration is whether they are effective to bar the nonsettling tort-feasor's right to contribution. The appellant argues, relying on *State Farm Mutual*,[1] that since he was not a party to the release his rights to contribution are not affected and, in addition, that under *Bielski* it is impossible to draft a release which will affect such right of the nonsettling tort-feasor. We consider both of these contentions are without merit. Releases of joint tort-feasors may and do take many forms having the characteristics and legal effect of a covenant not to sue, or a partial satisfaction of the damages and of the cause of action, or an accord and satisfaction of the whole cause of action, or a discharge from liability, or various combinations thereof. The direct and indirect legal effect of these

[1] *State Farm Mut. Automobile Ins. Co. v. Continental Casualty Co.* (1953), 264 Wis. 493, 59 N. W. (2d) 425.

concepts was established before the right of contribution between joint tort-feasors was recognized in this state and before the enactment of the Uniform Joint Obligations Act, *i.e.,* ch. 113, Stats.

The rules historically applied to actions between the injured party and one or more tort-feasors relating to primary liability. Difficulties and confusion increased in their application to contribution cases. Basic were the common-law rules that joint obligors on contract were not severally liable and had to be joined in one action while joint tort-feasors were both jointly and severally liable and any one could be sued and full recovery obtained against him. Consequently, a release of one joint obligor which discharged his liability was considered a satisfaction of the debt or of the whole cause of action, barring recovery from the other joint obligor. This was especially true of release under seal. Where the intention of the parties as shown by the release was not to satisfy the whole debt or operate as an accord and satisfaction and thus extinguishing the cause of action, some courts, including ours, treated such a release as having the effect of a covenant not to sue. This same technique was carried over into cases involving joint tort-feasors although the reasons therefor were not so much needed in order to effectuate the intention of the parties.[2] To emphasize the character of a release as not satisfying the debt or cause of action, express reservations of rights against the nonsettling tort-feasors were included in the release. For additional protection to the settling tort-feasor, an indemnity agreement was added and sometimes a satisfaction-of-judgment agreement.

In *State Farm Mutual* we construed a release providing for complete discharge of the settling tort-feasor with a reservation of rights of the full cause of action against the non-

---

[2] *Ellis v. Esson* (1880), 50 Wis. 138, 6 N. W. 518; *Kropidlowski v. Pfister & Vogel Leather Co.* (1912), 149 Wis. 421, 135 N. W. 839.

settling tort-feasor to be in the nature of a covenant not to sue and held the nonsettling tort-feasor's right to contribution was not affected. Significantly, the release did not purport to satisfy any part of the damages or of the cause of action. There was no settlement within the scope of an accord and satisfaction, and the whole cause of action remained against the nonsettling tort-feasor. It was thought necessary in that case to state no different result was reached under sec. 113.04, Stats.[3] However, it does not follow that all releases involving tort-feasors are in legal effect covenants not to sue or are governed by ch. 113, Stats.

The suggestion in *State Farm Mutual* that a release which did not reserve rights against the nonsettling tort-feasor would come under sec. 113.05, Stats., has not led in practice to the common use of such form of release. Lawyers have distrusted the effect of sec. 113.05 on rights of contribution and certainly that section is unworkable and entirely inadequate to carry out the intention of the parties making settlements in negligence cases. This view is borne out by the type of release involved in *Heimbach v. Hagen* (1957), 1 Wis. (2d) 294, 83 N. W. (2d) 710; *Lewandowski v. Boynton Cab Co.* (1959), 7 Wis. (2d) 49, 95 N. W. (2d) 823; *Jacobs v. General Accident Fire & Life Assur. Corp., Ltd.* (1961), 14 Wis. (2d) 1, 109 N. W. (2d) 462; *Kerkhoff v. American Automobile Ins. Co.* (1961), 14 Wis. (2d) 236, 111 N. W. (2d) 91. The releases in those cases, excepting *Kerkhoff*, were attempts to avoid sec. 113.05 by releasing the settling tort-feasor, satisfying a definite part of a

---

[3] "113.04 RELEASE OF SOME, EFFECT. Subject to the provisions of section 113.03, the obligee's release or discharge of one or more of several obligors, or of one or more of joint, or of joint and several obligors shall not discharge co-obligors, against whom the obligee in writing and as part of the same transaction as the release or discharge, expressly reserves his rights; and in the absence of such reservation of such rights shall discharge co-obligors only to the extent provided in section 113.05."

cause of action, reserving rights to the balance of it against the nonsettling tort-feasor, and in the process to completely protect the settling tort-feasor from liability to the injured party and from claims of contribution from the nonsettling tort-feasor. *Kerkhoff* expressly attempted to rely on sec. 113.05 although containing a reservation of rights and a satisfaction of one half of the cause of action.

In *Heimbach,* the release specifically provided *inter alia* a release of tort-feasors from their direct liability to the plaintiff, a covenant not to sue them, and an agreement that the plaintiff's claim and cause of action were credited and satisfied to the extent of one half thereof. This release was no mere covenant not to sue but a satisfaction of one half of the cause of action against the nonsettling tort-feasor, reserving the balance against the nonsettling tort-feasor, whatever that one half might prove to be. This feature it was pointed out distinguished the release from that in *State Farm Mutual.* As a practical matter, since the nonsettling tort-feasor under such a release would not have to pay to the settlor more than one half of his total damages, there was no good reason to preserve for the nonsettling tort-feasor a theoretical right of contribution which would never mature or ripen into recovery. Recognizing the intention of the release was controlling, this court took a shortcut and avoided a circuity of action by giving immediate effect to the release in barring the nonsettling tort-feasor's claim to a right of contribution. The same type of release involving the important factor of satisfying a definite portion of the cause of action thus releasing the nonsettling tort-feasor's primary liability, if any, to pay the full and complete damages was given the same effect of barring the asserting of the right of contribution in *Lewandowski, Jacobs,* and *Kerkhoff.*

The instant releases, while incorporating some elements of the *State Farm Mutual* release, contain, in addition, the important factor of satisfying part of the cause of action and

reserving the balance against the appellant. They, therefore, cannot be classified as merely covenants not to sue but must be governed by the rule of *Heimbach* unless this is impossible under the *Bielski* rule.

The appellant claims the instant releases cannot come under the *Heimbach* rule because no satisfaction of a definite percentage or portion of the cause of action can be stated in the release. Prior to *Bielski* the percentage or portion of liability of each joint tort-feasor was as a matter of law equal in proportion to the number of joint tort-feasors. Under the rule of *Bielski* the liability for contribution of each joint tort-feasor depends on a question of fact determined by an apportionment of the causal negligence attributable to all the joint tort-feasors. As stated in *Bielski,* we did not believe the change in the rule of contribution presented insuperable difficulties in drafting releases and suggested in order for a plaintiff to give a release or covenant which would protect the settling tort-feasor from a claim of contribution that the plaintiff must agree to satisfy such percentage of the judgment he ultimately recovers as the settling tort-feasor's causal negligence bears to all the causal negligence of all the tort-feasors. This was descriptive of the situation where the plaintiff sued the nonsettling tort-feasor and recovered a judgment for the full amount of the cause of action. We might well have added "or by the release he satisfies his cause of action to the extent of and releases the nonsettling tort-feasor for such percentage," and the effect would be the same. In the former case the plaintiff partially satisfies a judgment for the full damages while in the latter case the judgment is entered only for the unsatisfied percentage or portion of the damages.

Although we use the phrases "covenant not to sue" and also "releases with reservation of rights," we had in mind that a release of the *State Farm Mutual* type could be converted into a release which would protect the settling tort-

feasor from a claim of contribution by the plaintiff's agreeing to satisfy such percentage that might be determined under the *Bielski* rule and, likewise, a *Heimbach* type of release could retain its advantages by substituting for a definite percentage or proportion that percentage of negligence found upon the application of the *Bielski* rule. The appellant's argument that the *Heimbach* rule can only apply to a release which satisfies a definite portion of a cause of action determined at the time of the execution of the release is not sound and if that argument is not set at rest by the language in *Bielski,* it is by this opinion.

The appellant argues the instant releases come under sec. 113.04, Stats., and his right of contribution is unaffected. The respondents are in disagreement over whether ch. 113, Stats., applies and if so, what section. One argues if any section is applicable it is sec. 113.03; another argues sec. 113.05 applies. At least it is apparent that none of the parties agree, and so it is in most tort-release cases. In *Heimbach* we stated it was not necessary to decide whether any section of ch. 113 applied to that type of release. Perhaps the great confusion in the practice has arisen over attempting to apply ch. 113 to any release of joint tort-feasors. Since *Bielski,* ch. 113, which primarily deals with joint obligors under contracts, is ill-suited in its application to releases involving joint tort-feasors and affecting their rights of contribution. Because the instant releases contain a reservation of rights, they cannot come under sec. 113.05. In addition, the parties knew the settling tort-feasors were not paying the full amount of the plaintiff's claim and the amount of any tort-feasor's primary liability and the amount of contribution under *Bielski* could not be known at the time the releases were executed. Sec. 113.03, if applicable, would violate the intention of the parties or require a constrained construction of the phrase "value of any consideration received by the obligee." Sec. 113.04 cannot be applied if the intentions of the parties ex-

pressed in the releases are to control, because that section incorporates sec. 113.03. We hold, therefore, that ch. 113 only applies to a tort release when it expressly incorporates or refers to ch. 113 or the intention of the parties is so inadequately expressed that resort to ch. 113 is necessary to determine the intention. Releases involving tort liability, which by their terms are inconsistent with the provisions of ch. 113 and clearly express the intentions of the parties and the effect of the settlement, are not to be defeated by or governed by the sections of ch. 113. Such releases are outside the scope and intent of that chapter.

Finally the appellant contends that if the releases are effective to bar his right of contribution it is necessary in order to determine the percentage of the nonsettling tort-feasor's liability under *Bielski* for the settling tort-feasors to be a party to the suit even if their participation is not necessary to protect their interest because otherwise the court would not have jurisdiction of them and a proper issue of causal negligence could not be submitted to the trier of the fact. We find no merit in this contention. Normally, of course, allocation of negligence arises out of the necessity of determining contributory negligence, but in the absence of the issue of contributory negligence where joint tort-feasors are involved, *Bielski* requires an allocation of the causal negligence in order to determine contribution. A release of one tort-feasor before trial and subsequent dismissal of the action and counterclaim against him does not complicate this problem. The instant releases contemplate such an issue of allocation as binding upon the plaintiff because he has satisfied that part of his cause of action for which liability is found to be attributable to the settling tort-feasors. The issue between the plaintiff and the nonsettling defendant, which should be framed by an amendment to the pleadings, is the percentage of causal negligence, if any, of the nonsettling defendant, but such percentage of negligence can only be determined by a proper

allocation of all the causal negligence, if any, of all the joint tort-feasors and of the plaintiff if contributory negligence is involved. The determination of this issue between the plaintiff and the nonsettling defendant does not require the settling defendants to remain parties because the allocation, if any, of the causal negligence to the settling tort-feasors is merely a part of the mechanics by which the percentage of causal negligence of the nonsettling tort-feasor is determined. It makes no practical difference to the settling tort-feasors what percentage of causal negligence is allocated to them because they have bought their peace in any event.

We have held in cases dealing with the comparison of negligence between a plaintiff and a defendant which involved the negligence of a nonparty that it was error not to include in the apportionment question submitted to the jury the causal negligence of the nonparty in order to determine the percentage of negligence of the defendant, but on the facts such error was not prejudicial.[4] However, here, the failure to include in the apportionment question the causal negligence of the settling respondents would because of the releases necessarily be prejudicial to the nonsettling appellant. Under sec. 270.27, Stats., which requires a special verdict on all material issues, both the plaintiff and defendant are entitled to have the percentage of the nonsettling tort-feasor's negligence determined.

The proper framing of this issue requires the pleadings to be amended and since the plaintiff is in the best position, has received the advantages of the release, and has satisfied "a to-be-determined part" of his cause of action against the nonsettling tort-feasor defendant, he ought to amend his complaint. If, however, the plaintiff fails to do so and even if

---

[4] *Hardware Mut. Casualty Co. v. Harry Crow & Son, Inc.* (1959), 6 Wis. (2d) 396, 94 N. W. (2d) 577; *Ross v. Koberstein* (1936), 220 Wis. 73, 264 N. W. 642; *Patterson v. Edgerton Sand & Gravel Co.* (1938), 227 Wis. 11, 277 N. W. 636.

the complaint is amended, the appellant should be given the right to amend his pleadings to set forth the facts of the release and such other pertinent matter so that the issues are clearly drawn. Substantially this procedure was required by the trial court in granting the motion for summary judgment. Upon the trial the release should be given immediate effect, as it is for contribution purposes, and the judgment, if any, against the nonsettling defendant should only be for that percentage of negligence allocated to him by the findings or the verdict. The claim for the balance has been satisfied by the plaintiff and there is no point in going through the circuity of ordering a judgment for a larger amount and requiring the plaintiff to satisfy it. This procedure would avoid the problem which arose in *Kerkhoff*. We find no error in the trial court's granting the motion for summary judgment.

*By the Court.*—Judgment affirmed.