James R. FREY, a Minor, Appearing by Eugene Frey, His Father and Natural Guardian, and Eugene Frey, Respondents,

v.

Edward SNELGROVE, et al., Respondents,

Firestone Tire & Rubber Company, Appellant.

No. 47620.

Supreme Court of Minnesota.

Aug. 18, 1978.

Gray, Plant, Mooty, Mooty & Bennett and James S. Simonson and William L. Killion, Minneapolis, for appellant.

DeParcq, Anderson, Perl, Hunegs & Rudquist, O. C. Adamson, II, Minneapolis, for Frey.

Mahoney, Dougherty & Mahoney, Minneapolis, for Snelgrove.

**OTIS H. GODFREY, Jr., Justice.** *

This is an appeal taken by defendant Firestone Tire & Rubber Company from a judgment and order of the trial court whereby Firestone was held to be 80 percent responsible for plaintiff's personal injuries suffered in a one-car accident. By verdict and additur the plaintiffs were awarded $838,000 in damages which are not challenged on this appeal. Defendant Firestone claims the trial court erred in admitting certain evidence; in permitting two codefendants to continue as parties after they had settled with plaintiffs during the course of trial; and in not informing the jury of that settlement. We affirm.

The accident happened on March 30, 1973, on Interstate Highway No. 90, near Murdo, South Dakota. Plaintiff was one of the passengers in a Ford station wagon owned by defendant Edward Snelgrove and driven by Tyler Anderson. The vehicle was traveling at speeds of up to 95 miles per hour when the right rear tire blew out. It skidded violently, flew through the air, and finally came to rest over 700 feet away. The driver was killed and this plaintiff was paralyzed from his chest down as a result of the accident.

On the 6th day of trial, plaintiff and defendants Snelgrove and Anderson entered into a so-called Pierringer-type settlement.[1] Plaintiff released the settling de-

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

1. The settlement provided that it was intended to have the same effect as the release in *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963). The basic elements of a Pierringer release are: (1) The release of the settling defendants from the action and the discharge of a part of the cause of action equal to that part attributable to the settling defendants' causal negligence; (2) the reservation of the remainder of plaintiff's causes of action against the nonsettling defendants; and (3) plaintiff's agreement to indemnify the settling defendants from any claims of contribution made by the nonsettling parties and to satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendants have been released. See, Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota*, 3 Wm. Mitchell L.Rev. 1, 3, 8, notes 32 and 33 (1977). The release given by plaintiff con-

fendants as to their portion of the total causal negligence which might be found at trial and further agreed to indemnify the settling defendants from any liability which they might have to Firestone for contribution or indemnity, if those defendants were found chargeable for more than $700,000 of plaintiff's damages. Although the release dismissed the settling defendants, plaintiff expressly reserved the right to continue his action against Firestone. Under the agreement, $700,000 was to be paid to plaintiff after the judgment in the trial, provided that any recovery made by the plaintiff against Firestone was to be credited against the amount paid by the settling defendants.

Upon learning of the release, the trial court ruled that the settling defendants could not cross-examine witnesses regarding damages and that no party could refer to the settlement agreement during trial or argument.

Two days later, on the 8th day of trial, Firestone moved to exclude the settling defendants from further participation in the trial. All defendants had cross-claims against each other; Firestone refused to dismiss its claims with prejudice; and the trial court ruled that the settling defendants could continue to participate in the lawsuit. The jury was never advised of the existence and legal effect of the settlement.

The issues presented for review are:

1. Should settling defendants be thereafter dismissed from further participation in the trial?

2. Should the jury be informed of a settlement between some of the parties?

3. Did the trial court err in permitting the settling defendants to cross-examine plaintiff's expert witness and in admitting certain other evidence adverse to Firestone?

■ 1. The principal issues raised by this appeal are novel in Minnesota. Where there are multiple defendants in a tort action, the general rule of law is that a re-

lease of one joint tortfeasor releases all others. E. g., *Gronquist v. Olson*, 242 Minn. 119, 64 N.W.2d 159 (1954). In this case, however, the plaintiff specifically reserved his right to proceed against the nonsettling defendants, agreeing to indemnify the settling defendants from the liability they might have for contribution or indemnity to the remaining litigants. Firestone's motion to dismiss the settling defendants was denied due largely to Firestone's refusal to dismiss its own cross-claims with prejudice. Under the facts of this case, Firestone is precluded from now claiming that the trial court should have dismissed all cross-claims and removed the settling defendants from the lawsuit.

■ The use of a so-called Pierringer release is in accord with Minnesota practice and our law of comparative negligence in tort actions. The bar and trial bench of this state have recently been following the procedures set forth in *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963). In that decision the Wisconsin Supreme Court approved the release of a joint tortfeasor which reserved the plaintiff's right to maintain the cause of action against the remaining defendants and also held that the nonsettling defendants' right to contribution can be cut off by a plaintiff who agrees to indemnify the settling defendants against any claim of contribution. By the terms of this type of release the nonsettling defendant will never be required to pay more than his fair share as determined by the jury's finding of comparative negligence.

■ As the Wisconsin Supreme Court stated in *Peiffer v. Allstate Insurance Company*, 51 Wis.2d 329, 355, 187 N.W.2d 182, 185 (1971):

"It is a *Pierringer*-type release that the trial court held the release here involved to be. As such, it released the settling tort-feasor from any future liability including contribution, deriving from the automobile accident involved.

tained two additional provisions not found in a typical Pierringer release. The indemnity clause covered cross-claims for indemnity as well as contribution and the amount paid for

the settlement was contingent upon the amount recovered against the nonagreeing party at trial rather than a sum certain.

Additionally, it assured that the settling tort-feasor could not be made a party defendant in any action brought against nonsettling tort-feasors. Thus, since the plaintiff is limited in recovery to the unsatisfied percentage of the damages—the percentage attributable to the nonsettling tort-feasor—there is to be no payment sought beyond the nonsettling tort-feasor's share and there is no basis for contribution."

A definitive article by John E. Simonett on the use of the Pierringer release in Minnesota appeared in 3 Wm. Mitchell L.Rev. 1. The author points out that "the release was designed to operate in a jurisdiction which has comparative negligence to apportion liability between defendants, uses the special verdict form, and allows contribution between joint tortfeasors." Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota*, 3 Wm. Mitchell L.Rev. 1, 11 (1977) (hereafter Simonett).

■ Minnesota has all these prerequisites. We therefore hold that where the plaintiff has entered into a Pierringer-type release, settling his claims with some defendants and agreeing to pay any cross-claims of the nonsettling defendants, the settling defendants usually should be dismissed, but their negligence should nevertheless be submitted to the jury. If the release so provides, the indemnity cross-claims between all defendants should also be dismissed.

The Minnesota comparative negligence statute, Minn.St. 604.01, subd. 1, provides in part that where joint liability exists "contributions to awards shall be in proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award." [2] The Pierringer release is based on the formula that each joint tortfeasor including the nonsettling defendant is liable only for that part of the award which is his percentage of casual negligence. Since the nonsettling defendant is relieved from paying more than his fair

share of the verdict, the other defendants may properly be dismissed from further participation in the trial.

■ There is no legal reason why the indemnity provision of the release should not also be upheld if it is in accord with public policy. The courts should encourage settlements openly made with prompt and adequate notice to the trial judge and all interested parties. See, *Schmidt v. Smith*, 299 Minn. 103, 216 N.W.2d 669 (1974).

■ 2. Firestone further asserts error in the trial court's failure to inform the jury of the settlement and its effect, especially since the settling defendants remained in the lawsuit. We have examined the record and find no prejudicial error to defendant Firestone. Much of the plaintiffs' case had already been presented to the jury prior to the settlement, and thereafter the settling defendants did not cross-examine or comment on plaintiffs' damages.

Regarding the effect of settlement agreements during trial, in *Pacific Indem. Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548, 558 (Minn. 1977), we stated:

"* * * [W]e must examine [settlement agreements] on a case-by-case basis and assess their validity and effect. If there is no secrecy surrounding a settlement, and if it does not act to prejudice the rights of the nonagreeing parties, then we see no general prohibition against such agreements."

■ In this case all parties agree that the total damages are not excessive. The jury's allocation of 80 percent of the fault to Firestone is sustained by the evidence, and there is no basis for this court to reverse that finding. The extent to which a settlement should be disclosed to the jury will vary from case to case and must rest in the sound discretion of the trial court. The goal, of course, must always be to preserve the remaining parties' right to a fair trial under the circumstances.

2. Minn.St. 604.01, subd. 1, was recently amended by L. 1978, c. 738, §§ 6, 7, to provide for a comparison of fault rather than a comparison of negligence only.

In addition to agreeing to a Pierringer-type release, plaintiffs stipulated that any recovery made against Firestone up to $700,000 should be credited to the amount to be paid by the settling defendants. When such a defendant is called to testify by one of the remaining parties, the trial court should inform the jury of the effect of the release, so that they might consider any bias of the witness.

3. In future cases involving so-called Pierringer releases, we suggest the following guidelines: When a settlement or release is entered into, the trial court and other parties should be immediately notified, and the terms of the agreement made a part of the record. If the plaintiff has agreed to indemnify the settling defendant against all possible cross-claims of the non-settling parties, the trial court should ordinarily dismiss the settling defendant from the case, in accordance with the Pierringer release. Since the settling defendant has fixed his limits of financial liability to the plaintiff by entering into the release, he is deemed also to have relinquished any cross-claims against the remaining defendants.

On the other hand, if a nonsettling party has cross-claims for both contribution and indemnity, either of which is not covered by the terms of the release, then the settling defendant should continue as a party for the limited purpose of defending against the surviving cross-claim.

In almost every case the trial court should submit to the jury the fault of all parties, including the settling defendants, even though they have been dismissed from the lawsuit. If there is "evidence of conduct which, if believed by the jury, would constitute negligence [or fault] on the part of the person * * * inquired about," the fault or negligence of that party should be submitted to the jury. *Connar v. West Shore Equipment of Milwaukee*, 68 Wis.2d 42, 45, 227 N.W.2d 660, 662 (1975).

Where the settlement and release agreement is executed during trial, the court should usually inform the jury that "there has been a settlement and release if for no other reason than to explain the settling tortfeasor's conspicuous absence from the court room." Simonett, *supra*, at 30.

Although a release agreement is admissible under Rule 408 of the Rules of Evidence, where it is offered for a purpose such as proving bias or prejudice of a witness, it is within the trial court's discretion to determine whether to admit the actual agreement into evidence, or the details thereof. The jury should be given those facts necessary to arrive at a fair verdict to all parties, but as a general rule the amount paid in settlement should never be submitted. That figure itself may have little relation to the actual damages of a plaintiff, since it may reflect a compromise, the evaluation of a defendant's potential liability, and many other factors not relevant to a jury's consideration of actual monetary damages.

The foregoing procedures are guidelines to be applied so as to assure a fair trial to all parties and may be modified when 'that end would not be served. A trial court's deviation would not constitute error if those modifications substantially protect the rights of all parties and preserve the adversary process.

4. We have reviewed the other alleged grounds for reversal and find them without sufficient merit. The latitude to be allowed on cross-examination is within the discretion of the trial court and its action will not be reversed unless a clear abuse of discretion is shown. *Klingbeil v. Truesdell*, 256 Minn. 360, 98 N.W.2d 134 (1959). The other items received in evidence had relevance to the issues and were properly submitted to the jury.

In conclusion, all the defendants consented to the verdict with the additur as ordered by the trial court on January 28, 1977. We affirm that Firestone is liable for 80 percent, and the settling defendants for 20 percent of the total judgment, together with interest at the rate of 6 percent per annum from November 15, 1975, on the principal amount of the jury verdicts, and

at the same rate from February 28, 1977, on the amount of the additur.

The decision of the trial court is accordingly affirmed.

Affirmed.

SHERAN, C. J., and WAHL, J., took no part in the consideration or decision of this case.