Renee K. VanCleve and Thomas C. VanCleve, Plaintiffs-Respondents,†

v.

City of Marinette and Wausau Insurance Company, Defendants-Appellants,

Kenneth Keller, d/b/a Keller Cement Contractors, Keller Cement Contractors, Auto Owners Insurance, and State Farm Fire & Casualty Co., Defendants.

Court of Appeals

*No. 01–0231. Oral argument December 3, 2001.—Decided December 18, 2001.*

2002 WI App 10

(Also reported in 639 N.W.2d 792.)

† Petition to review granted 4-22-02.

On behalf of the defendants-appellants, the cause was submitted on the briefs of and oral argument by *James O. Moermond III* of *Law Office of Stilp and Cotton*, Wausau.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of and oral argument by *Jonny L. Waara* of *Petrucelli & Petrucelli*, Iron River, Michigan.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. WISCONSIN STAT. § 81.17 provides conditional protection to a municipality when it is sued along with, for example, a contractor for injuries caused by highway defects. If both the municipality and the contractor are found liable, regardless of the apportionment between them, the contractor is responsible for the entire award, if it can pay. The municipality must pay only if the contractor is unable to pay. However, what happens when the contractor settles with the injured person for less than the amount of the ultimate award? Must the municipality then pay the balance? That is the question here. We hold that the municipality is not responsible for paying any of the award.

## BACKGROUND

¶ 2. On August 24, 1998, Renee VanCleve tripped and fell on a recently constructed curb and gutter in the City of Marinette. She sued the City and Kenneth Keller, a private contractor, alleging negligence in the construction and maintenance of the curb and gutter.

125

The City asserted WIS. STAT. § 81.17 as one of several affirmative defenses. It also cross-claimed against Keller for contribution.

¶ 3. On August 5, 2000, VanCleve signed a *Pierringer v. Hoger*, 21 Wis. 2d 182, 192–93, 124 N.W.2d 106 (1963), release in favor of Keller releasing Keller from all claims.[1] The City joined in a stipulation to dismiss Keller from the lawsuit. The stipulation expressly stated that the City's cross-claim against Keller was settled.

¶ 4. The case was tried to a jury, which found causal negligence as follows: the City 90%, Keller 9%, and VanCleve 1%.

¶ 5. The City then moved to have VanCleve's claim dismissed based on WIS. STAT. § 81.17. The City argued that under the statute Keller was primarily liable for the entire judgment and the City was only secondarily liable. The City claimed that the judgment against it was not enforceable until execution of a judgment against Keller was returned unsatisfied. Because VanCleve settled with Keller and was unable to obtain a judgment against Keller, the City contended that VanCleve cannot recover against the City.

¶ 6. The trial court concluded that WIS. STAT. § 81.17 did not apply because of the *Pierringer* release and the stipulation and order to dismiss. The court reasoned that the statute required the City to keep Keller in the lawsuit. However, because the City

---

[1] A *Pierringer* release operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may have to nonsettling defendants and to bar subsequent contribution actions the non-settling defendants might assert against the settling defendants. *Pierringer v. Hoger*, 21 Wis. 2d 182, 192–93, 124 N.W.2d 106 (1963).

did not object to the *Pierringer* release and, in fact, signed a stipulation to dismiss Keller, the court denied the City's motion and entered judgment against the City.

## STANDARD OF REVIEW

¶ 7. Here, the question involves the application of a statute to undisputed facts. This is a question of law that we review independently of the trial court. *Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 758–59, 300 N.W.2d 63 (1981). The guiding principle in statutory construction is to discern legislative intent. *State v. Irish*, 210 Wis. 2d 107, 110, 565 N.W.2d 161 (Ct. App. 1997). We first look to the language of the statute itself and attempt to interpret it based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145 (1986).

## DISCUSSION

¶ 8. The City argues that the application of WIS. STAT. § 81.17 bars any recovery by VanCleve against the City. It contends that when the jury found Keller liable, Keller's liability became primary. Section 81.17 provides that if damages are caused by the negligence of the City and any other party, the other party shall be primarily liable. *Id.* Therefore, the City contends that the judgment against it is not enforceable until execution of a judgment against Keller is returned unsatisfied. Because VanCleve has failed to obtain a judgment against Keller, the City concludes VanCleve cannot recover against the City. The City further contends that it did not waive its affirmative defense under § 81.17 by fail-

127

ing to object to the *Pierringer* release or by dismissing its cross-claim against Keller.[2]

## I. WISCONSIN STAT. § 81.17

¶ 9. Under the common law, municipalities were originally immune from tort liability. *See Hayes v. Oshkosh*, 33 Wis. 314, 318–19 (1873). Shortly after statehood, the legislature cracked open the door a bit by permitting lawsuits against municipalities for injuries caused by highway defects. *Dickens v. Kensmoe*, 61 Wis. 2d 211, 220, 212 N.W.2d 484 (1973). This was the forerunner to present-day WIS. STAT. § 81.15.[3]

[2] The parties slightly misstate the issue. The briefs and oral argument focused on whether the trial court could enter judgment against the City. WISCONSIN STAT. § 81.17 does not bar entering judgment. Rather, the precise issue is whether Van-Cleve can enforce a judgment against the City. However, the practical import is the same. Therefore, we will treat the issue as presented by the parties.

[3] WISCONSIN STAT. § 81.15 reads as follows:

If damages happen to any person or his or her property by reason of the insufficiency or want of repairs of any highway which any town, city or village is bound to keep in repair, the person sustaining the damages has a right to recover the damages from the town, city or village. If the damages happen by reason of the insufficiency or want of repairs of a highway which any county by law or by agreement with any town, city or village is bound to keep in repair, or which occupies any land owned and controlled by the county, the county is liable for the damages and the claim for damages shall be against the county. If the damages happen by reason of the insufficiency or want of repairs of a bridge erected or maintained at the expense of 2 or more towns the action shall be brought against all the towns liable for the repairs of the bridge and upon recovery of judgment the damages and costs shall be paid by the towns in the proportion in which they are liable for the repairs; and the court may direct the judgment to be collected from each town for its proportion only. The amount recoverable by any

128

¶ 10. Municipalities responded by enacting ordinances to protect themselves from liability. Those "ordinances generally provided that when the negligence of a private tort-feasor had created the defect for which the municipality was also liable statutorily, the municipality's liability was only secondary to the liability of the private tort-feasor." *Dickens*, 61 Wis. 2d at 215.

¶ 11. In 1889, the legislature codified the ordinances in statutory form. A statute was enacted containing "almost verbatim the language of these city ordinances." *Id.* at 216. Following the 1898 revision, the statute has continued in substantially the same form as WIS. STAT. § 81.17 now reads.[4] *Dickens*, 61 Wis. 2d at 216.

---

person for any damages so sustained shall not exceed $50,000. The procedures under s. 893.80 shall apply to the commencement of actions brought under this section. No action may be maintained to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless the accumulation existed for 3 weeks.

[4] WISCONSIN STAT. § 81.17 reads as follows:

Whenever damages happen to any person or property by reason of any defect in any highway or other public ground, or from any other cause for which any town, city, village or county would be liable, and such damages are caused by, or arise from, the wrong, default or negligence thereof and of any person, or private corporation, such person or private corporation shall be primarily liable therefor; but the town, city, village or county may be sued with the person or private corporation so primarily liable. If the town, city, village or county denies its primary liability and proves upon whom such liability rests the judgment shall be against all the defendants shown by the verdict or finding to be liable for the damages; but judgment against the town, city, village or county shall not be enforceable until execution has been issued against the party found to be primarily liable and returned unsatisfied in whole or in part; on such return being made the defendant town, city, village or county shall be bound by the judgment. The unpaid balance shall be collected in the same way as other judgments.

¶ 12. As *Armour v. Wisconsin Gas Co.*, 54 Wis. 2d 302, 308, 195 N.W.2d 620 (1972), observed, WIS. STAT. §§ 81.15 and 81.17 must be read in tandem. Had this case arisen before these statutes were enacted, Van-Cleve could not have sued the City at all. Her only recourse would have been against Keller. He in turn would have been responsible for the entire judgment.

¶ 13. After WIS. STAT. §§ 81.15 and 81.17, Van-Cleve was able to sue both Keller and the City. However, the City retained a type of conditional immunity in that Keller was primarily liable. As before, Keller was responsible for the entire verdict, but only if he could pay. If he could not pay, then the City lost its protection, its secondary liability kicked in, and it had to pay any unsatisfied portion of the judgment.

¶ 14. Common law governmental immunity for tort claims was abrogated by *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 115 N.W.2d 618 (1962). WISCONSIN STAT. § 81.15 "is no longer needed as a basis of liability and its existence is somewhat ambiguous." *Dickens*, 61 Wis. 2d at 218. In this context, § 81.17 may seem an anachronism as well. Nevertheless, the legislature has not seen fit to repeal the statute.

¶ 15. As stated, WIS. STAT. § 81.17 creates primary and secondary liability for injuries caused by highway defects. A curb and gutter falls under the definition of "highway." *See Weis v. A.T. Hipke & Sons, Inc.*, 271 Wis. 140, 141, 72 N.W.2d 715 (1955). Section 81.17 provides that if damages are caused by the negligence of a municipality and any other party, that other party shall be primarily liable. The statute further states that "judgment against the town, city, village or county shall not be enforceable until execution has been issued against the party found to be primarily liable and returned unsatisfied in whole or in part."

¶ 16. In *Weis*, the court held that if a party other than the municipality had any liability to the plaintiff, the other party would be primarily liable under Wis. Stat. § 81.17 and the municipality could only be secondarily liable. *Weis*, 271 Wis. at 143. "[T]here can be neither joint nor primary liability on the part of the city if [the other party] has any liability to the plaintiff. . . ." *Id.* In other words, the municipality remains primarily liable to the plaintiff "only when there is a failure to fasten what, in the absence of the statute, would be joint liability on someone else. . . ."[5] *Id.* As soon as the other party is found liable, its liability becomes primary. *Id.*

¶ 17. In *Dickens*, the court determined that Wis. Stat. § 81.17 does not protect a municipality when only the municipality is liable for creating a highway defect. The court held that § 81.17 "creates a secondary liability on a town, city, village, or county, for defects in a highway which cause damage only when the negligence, wrong, or default of another tort-feasor also causally contributes to that defect." *Dickens*, 61 Wis. 2d at 220.

¶ 18. VanCleve claims, nonetheless, the purpose of Wis. Stat. § 81.17 is only to insulate the City from portions of any verdict for which it is not responsible. She argues the statute does not insulate the City from its own liability. In other words, she contends the statute makes the City secondarily liable for Keller's 9%, but it is still primarily liable for its 90%.

¶ 19. VanCleve cites no controlling authority. The basis for her argument is simply that the legislature

[5] *Weis* suggests that the defendants in Wis. Stat. § 81.17 would be joint tortfeasors if it were not for the statute. Instead, under § 81.17, the defendants are tortfeasors with primary and secondary liability. *Weis v. A.T. Hipke & Sons, Inc.*, 271 Wis. 140, 143, 72 N.W.2d 715 (1955).

would have expressly stated that the City was secondarily liable for its percentage of the liability.

¶ 20. We conclude, however, that WIS. STAT. § 81.17 is unambiguous. Even if it were ambiguous, the case law and the statutory history, as previously explained, lead to only one conclusion. The statute states that if the damages are caused by the wrong of the City "and of any person, or private corporation, such person or private corporation shall be primarily liable therefor." WIS. STAT. § 81.17. Therefore, a person who has any liability is liable for the entire judgment. *See Weis*, 271 Wis. at 143.

## II. *PIERRINGER* RELEASE

¶ 21. The City argues it did not waive its affirmative defense by failing to object to the *Pierringer* release. It contends there was no way it could have objected. According to the City, a non-settling tortfeasor has no control over a plaintiff's decision to settle with another tortfeasor.

¶ 22. A *Pierringer* release operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may have to nonsettling defendants and to bar subsequent contribution actions the non-settling defendants might assert against the settling defendants. *Pierringer*, 21 Wis. 2d at 193.

¶ 23. Generally, one joint tortfeasor has a right to contribution from another joint tortfeasor for any sums the first tortfeasor is obligated to pay a plaintiff in satisfaction of the second's liability. *Fleming v. Threshermen's Mut. Ins. Co.*, 131 Wis. 2d 123, 130, 388 N.W.2d 908 (1986). However, a *Pierringer* release by a

plaintiff of one joint tortfeasor limits a second joint tortfeasor's liability to the amount reflecting its proportion of wrongdoing; this is because the second tortfeasor's right to indemnification or contribution from the first tortfeasor has been lost due to the plaintiff's actions. *Fleming*, 131 Wis. 2d at 131.

¶ 24. "A nonsettling tort-feasor has no control over a claimant's decision to settle with another tortfeasor." *Unigard Ins. Co. v. Insurance Co. of N. Am.*, 184 Wis. 2d 78, 87 n.5, 516 N.W.2d 762 (Ct. App. 1994). In *Johnson v. Heintz*, 73 Wis. 2d 286, 291, 243 N.W.2d 815 (1976), a passenger in a car sued the driver and her insurance company, American Family Insurance. American Family then filed a third-party complaint against State Farm for contribution. State Farm insured the driver of a car that rear-ended the car the plaintiff rode in.

¶ 25. The plaintiff entered into a *Pierringer* release with State Farm over American Family's objection. *Johnson*, 73 Wis. 2d at 294–95. The trial court approved the settlement agreement. On appeal, our supreme court recognized that it was harmless error for the trial court to approve the settlement agreement. *Id.* The plaintiff did not have a right to settle with State Farm because there was no direct claim against State Farm. *Id.* at 297. However, the error was harmless because the parties could have taken steps to place themselves in a direct adversary position. *Id.* at 298.

¶ 26. The court reasoned that had State Farm "been an initial party defendant . . . no objection could be raised to the fact that the plaintiff and a joint tortfeasor defendant were exercising the option approved by *Pierringer*. "The settlement of the claim

133

against a defendant under those circumstances requires that he be dismissed from the action." *Id.* at 297.

¶ 27. VanCleve argues that by failing to object to the *Pierringer* release, the City waived its affirmative defense under Wɪs. Sᴛᴀᴛ. § 81.17 and implicitly agreed to become a joint-tortfeasor. VanCleve contends that the City could have objected to the *Pierringer* release because it was claiming secondary liability, but it chose not to do so.

¶ 28. Based upon the applicable case law, we conclude the City could not have kept Keller in the lawsuit by objecting to the *Pierringer* release. *See Unigard Ins.*, 184 Wis. 2d at 87 n.5. Any attempt by the City to object to the *Pierringer* release would have been unsuccessful because VanCleve and Keller were direct adversaries. *See Johnson*, 73 Wis. 2d at 299.

¶ 29. VanCleve cites no authority to support her argument that a non-settling tortfeasor, claiming secondary liability as an affirmative defense, is required to object to a *Pierringer* release. The result of this would be to effectively prohibit a *Pierringer* release by barring VanCleve from settling her claim against Keller.

¶ 30. The *Pierringer* release, voluntarily agreed to by VanCleve and Keller, required that Keller be dismissed from the lawsuit. The City had no way of keeping Keller in the lawsuit and the *Pierringer* release effectively dismissed the City's cross-claim against Keller.

¶ 31. There are distinct consequences arising from the execution of a *Pierringer* release. "The existence of these consequences cannot be questioned and ought be a forewarning to the unwary." *Unigard Ins.*, 184 Wis. 2d at 86. By opting for the *Pierringer* release, VanCleve gambled that the jury would not find Keller liable.

¶ 32. We conclude that the non-settling City, claiming secondary liability as an affirmative defense, was not required to object to a *Pierringer* release in order to retain its affirmative defense. It is VanCleve's responsibility to evaluate the effects of a *Pierringer* release and to determine whether the release is in her best interests.

III. STIPULATION AND ORDER

¶ 33. The City argues it did not waive its affirmative defense by stipulating to dismiss its cross-claim against Keller. It contends that, while the stipulation and order expressly waived the City's cross-claim against Keller, the WIS. STAT. § 81.17 affirmative defense was not waived because the stipulation and order did not mention the defense.

¶ 34. In contrast, VanCleve argues that the City waived its affirmative defense by dismissing its cross-claim against Keller. After VanCleve signed the *Pierringer* release, the City signed the stipulation expressly settling the City's cross-claim against Keller.

¶ 35. The City's cross-claim for contribution and the affirmative defense are two distinct parts of the pleadings. The City's affirmative defense is not conditioned on its contribution claim, but is an independent and separate part of the City's answer. *See* WIS. STAT. § 802.01(1).

¶ 36. VanCleve cites no authority for the argument that dismissing the cross-claim against Keller waived the City's affirmative defense under WIS. STAT. § 81.17. The defense was not waived because the stipulation and order did not mention the City's affirmative defense.

135

¶ 37. In addition, the language dismissing the City's cross-claim in the stipulation and order was unnecessary. The cross-claim had already been rendered moot when VanCleve signed the *Pierringer* release. By a *Pierringer* release, Keller's liability was transferred to VanCleve, and any claim the City may have had against Keller was barred. *See Pierringer*, 21 Wis. 2d at 193. In other words, the City effectively lost its cross-claim for contribution when VanCleve signed the *Pierringer* release. For these purposes, the stipulation and order to dismiss was superfluous.

IV. SETTLEMENT OF PERSONAL INJURY CLAIMS

¶ 38. VanCleve asserts that the City's arguments would stifle settlement of personal injury claims. She claims the "social policy favoring settlements is stronger than that favoring contribution among tortfeasors." *See Smith v. Rural Mut. Ins. Co.*, 20 Wis. 2d 592, 603, 123 N.W.2d 496 (1963). According to VanCleve, application of WIS. STAT. § 81.17 does not promote settlement and runs counter to the abrogation of governmental immunity. *See Holytz*, 17 Wis. 2d at 29.

¶ 39. There are two problems with VanCleve's argument. First, as we have already held, the words of WIS. STAT. § 81.17 are unambiguous. *See Dickens*, 61 Wis. 2d at 217. Considerations of public policy cannot trump an unambiguous statute. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992).

¶ 40. Second, the public policy implications are not one-sided. VanCleve suggests settlements will be discouraged if the City's arguments prevail. However, it is possible that settlements will be discouraged whichever way we decide. On the one hand, if the City

prevails, plaintiffs may no longer settle with non-municipal defendants for fear of the application of primary and secondary liability. On the other hand, if VanCleve prevails, settlement agreements may be rendered useless because municipalities will have the power to keep the non-municipal defendants in the lawsuit.

¶ 41. Therefore, the problem for settlements will not be resolved on the basis of who prevails here. Rather, the problem is with the statute and for the legislature to address. As far as we are aware, WIS. STAT. § 81.17 is unique. A municipality is not protected this way in any other kind of lawsuit. The historical reason for the statute disappeared when governmental immunity was abolished. As long as § 81.17 continues on the books, settlements will be discouraged.

*By the Court.*—Judgment reversed.