Larry BUNCE, Plaintiff,

v.

A.P.I., INC., et al., Defendants,

and

A.P.I., Inc., Respondent,

v.

Mac Arthur Company, et al., Third–Party Defendants,

Illinois Tool Works, Inc., et al., Appellants (A04–1348),

Egan Companies, Inc., Appellants (A04–1394).

Nos. A04–1348, A04–1394.

Court of Appeals of Minnesota.

June 7, 2005.

---

Kyle B. Mansfield, Stephen L. Wilson, Foley & Mansfield, P.L.L.P., Minneapolis, MN, for appellants Illinois Tool Works, Inc., et al.

Jon P. Parrington, Pustorino, Tilton, Parrington & Lindquist, P.L.L.C., Minneapolis, MN, for appellant Egan Companies, Inc.

Thomas R. Thibodeau, David M. Johnson, Thibodeau, Johnson, & Feriancek, P.L.L.P., Duluth, MN, for respondent A.P.I., Inc.

Considered and decided by RANDALL, Presiding Judge, ROBERT H. SCHUMACHER, Judge, and WRIGHT, Judge.

## OPINION

RANDALL, Judge.

Following the district court's denial of appellants' motion for summary judgment, the following two questions were certified for appeal: (a) given that plaintiff executed a *Pierringer* release in exchange for a money payment from defendant and third-party plaintiff A.P.I. (respondent), can respondent A.P.I. pursue claims for indemnity or contribution against non-settling third-party defendants (appellants); and (b) does the doctrine of claim preclusion or the fact that the plaintiff died change the effect that the *Pierringer* release has on respondent A.P.I.'s indemnity and contribution claims?

## FACTS

Plaintiff Larry Bunce was employed as an ironworker from 1961 to 1994. On April 4, 2003, Bunce brought suit against 14 defendants, including respondent A.P.I., Inc., alleging that he contracted mesothelioma as a result of his exposure to asbestos-containing products that were manufactured, sold, or distributed by the defendants. Respondent subsequently filed third-party complaints against several entities, including appellants Illinois Tool Works, Inc.; Turner Construction Company; Gagnon, Inc.; Azco, Inc.; Insulation Sales Company; and Egan Companies, Inc., who were not sued directly by Bunce. Respondent alleged in its third-party complaints that if Bunce sustained the damages as alleged in his complaint, those injuries and damages were caused by negligence, strict liability, and breach of warranty of the third-party defendants. Respondent alleged that if

Bunce recovered a judgment against respondent, respondent would be entitled to full indemnity or contribution from the third-party defendants.

On July 9, 2003, the district court granted Bunce's motion to sever respondent's third-party claims so that Bunce's claims could proceed to trial without delay. On the morning of his scheduled trial, Bunce settled his case against respondent with a *Pierringer* release. *See Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963). Bunce executed a *Pierringer* release with respondent in exchange for respondent's settlement payment. The district court subsequently dismissed Bunce's suit against respondent with prejudice. Bunce died a few weeks later.

In September 2003, appellants and third-party defendants Illinois Tool Works, Inc., Turner Construction, Gagnon, Azco, and Insulation Sales moved for summary judgment on respondent's contribution claim, arguing that respondent had no contribution or indemnity rights against the third-party defendants because it had settled its differences with a *Pierringer* release. Appellant Egan Companies joined in the motion. The district court denied appellants' motion. On February 25, 2004, appellants sought the district court's permission to file a motion to reconsider its ruling. In the alternative, appellants filed a motion seeking to have the district court certify two questions presented as important and doubtful. The district court denied permission to bring the proposed motion to reconsider, but granted the motion to certify to this court the two questions as important and doubtful. This court consolidated the appeals by Illinois Tool Works, et al. and by Egan Companies.

## ISSUE

After plaintiff Bunce executed a *Pierringer* release in exchange for a settlement

payment from defendant and third-party plaintiff A.P.I., can A.P.I. now pursue claims for contribution and indemnity against nonsettling third-party defendants?

## ANALYSIS

■ When certified questions arise from a denial of summary judgment, this court reviews the record to determine whether genuine issues of material fact remain for trial and whether the district court erred in applying the law. *Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493 (Minn.1998). Absent genuine issues of material fact, appellate courts review certified questions de novo. *Id.*

## I.

Appellants argue that because respondent and Bunce executed a standard *Pierringer* release, respondent cannot pursue claims for contribution or indemnity against nonsettling third-party defendants. We agree. Derived from *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963), the basic elements of a *Pierringer* release are: (1) The release of the settling defendants from the action and the discharge of a part of the cause of action equal to that part attributable to the settling defendants' causal negligence; (2) the reservation of the remainder of plaintiff's causes of action against the nonsettling defendants; and (3) plaintiff's agreement to indemnify the settling defendants from any claims of contribution made by the nonsettling parties and to satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendants have been released. *Frey v. Snelgrove*, 269 N.W.2d 918, 920 n. 1 (Minn.1978). Ordinarily, the settling tortfeasor is dismissed with prejudice from the lawsuit and all cross-claims for contribution between

the settlor and the remaining defendants are likewise dismissed. *Rambaum v. Swisher*, 435 N.W.2d 19, 22 (Minn.1989).

Here, respondent claims a difference in the standard *Pierringer* law, arguing that it is not improperly asserting claims for contribution and indemnity against nonsettling "sued" defendants; but, rather is seeking contribution and indemnity from third-party defendants (appellants) who were not sued directly by the original plaintiff (Bunce). We cannot find that this distinction makes any difference in the long-settled law surrounding *Pierringer* releases.

Respondent asserts, and the district court agreed, that respondent could proceed with its claims for contribution and indemnity against appellants because Minnesota law recognizes a defendant's right to proceed with a third-party action following a settlement with the plaintiff. In support of this position, the district court cited *Samuelson* and *Altermatt,* which held that a third-party contribution and indemnity action survives a settlement between a plaintiff and a third-party plaintiff. *Samuelson v. Chicago, Rock Island & Pac. R.R.*, 287 Minn. 264, 268–70, 178 N.W.2d 620, 624 (1970) (contribution); *Altermatt v. Arlan's Dep't. Stores*, 284 Minn. 537, 538, 169 N.W.2d 231, 232 (1969) (indemnity). The simple answer is, both *Samuelson* and *Altermatt* were decided *before Frey*, the case in which the Minnesota Supreme Court first acknowledged the acceptance of *Pierringer* releases by Minnesota courts. *Samuelson* and *Altermatt* could not contemplate the effect of a *Pierringer* release. Their precedential value, if any, on a *Pierringer* issue, is limited.

■ Appellants correctly argue that pursuant to a *Pierringer* release, the settling tortfeasor will never pay more than its fair share and, thus, any claims that

respondent has for contribution or indemnity will never accrue or mature. A *Pierringer* release cuts off the nonsettling defendants cross-claims for contribution as a matter of law. *See Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1007–9 (8th Cir.1990) (applying Minnesota law to the parties *Pierringer* release). This is because

> [t]he Pierringer release is based on the formula that each joint tortfeasor including the nonsettling defendant is liable only for that part of the award which is [its] percentage of casual [sic] negligence. Since the nonsettling defendant is relieved from paying more than [its] fair share of the verdict, the [settling] defendants may properly be dismissed from further participation in the trial.

*Frey*, 269 N.W.2d at 922. Because the jury then determines the relative fault of all parties, including that of the settling defendants, even though the settling defendants have been dismissed,

> [t]he settling tortfeasor who uses a *Pierringer* release does not settle for less than [its] share, but precisely for [its] share—no less.
>
> . . .
>
> [T]he non-settling party will never pay more than [its] share, because [its] exposure is limited to [its] own percentage of causal negligence—exactly [its] share—attributed to [it] at trial.

*Alumax*, 912 F.2d at 1009 (quoting John Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota*, 1, 3 Wm. Mitchell L. Rev. 18 (footnote omitted)). The legal effect of the *Pierringer* release is that each tortfeasor pays only its proportionate share of liability, and no more, and, thus, there can be no liability for contribution. *Id.* at 1010.

 It can do this because the *Pierringer* release protects the nonsettling defendants who choose to go to trial with the plaintiff from ever having to pay more than their fair share of the verdict. At trial, they are free to try and shift all, or as much as they can, of the negligence blame onto the settling defendant. That will hold down their share of the verdict. The settling defendant, who is not in court, is protected because the money it paid the plaintiff through a *Pierringer* release settles once and for all the fixed amount it owes the plaintiff. If not all of the defendants settle and there is a trial, and if the jury lays all the negligence on the nonsettling defendants, they must pay and the settling defendant may have "overpaid" for the protection of not having to go to trial and face the unknown. If the nonsettling defendants are able to lay off the negligence on the settling defendant, they only pay the small part, if any, attributable to them and the plaintiff cannot recover any more from the settling (*Pierringer*) defendant than it already has. The *Pierringer* theory is bottomed as a plus for plaintiffs. It allows them to get money out of some defendants, in a multi-defendant lawsuit, and retain the right to continue with the suit against those who choose not to settle. Were it not for *Pierringer*, the plaintiff would be brick-walled by the old common-law rule, "you release one defendant, you release them all." Thus, without *Pierringer* law, multiple defendants could stonewall a plaintiff together, refuse to settle, and hope the plaintiff wears down before trial. *Pierringer* law allows the plaintiff to collect sums certain and then use that money to continue the lawsuit against others, if it chooses. As appellants vigorously point out, *Pierringer* law in Minnesota is well settled, and has been accepted by plaintiffs and defense counsel for decades. It is a provident tool for both sides. Appellants argue no end around attempts to negate the spirit of the law should be allowed. We agree.

■ Here, it is undisputed that Bunce and respondent entered into a *Pierringer* release. Paragraph seven states that:

"It is understood and agreed that the purpose, intent, and legal effect of this document is to bar forever any recovery, contribution, indemnity, or subrogation against releasees by any other party as a result of the accident except and other than such elements as are cognizable under the workers compensation statute and in accordance with *NAIG [Naig] v. Bloomington Sanitation*, 258 N.W.2d 891 (1977). It is further understood and agreed that this document shall have the same effect as the releases described in [*Pierringer*] and in [*Frey*], and shall be so construed."

Paragraph eleven provides that "[t]his release shall be construed and interpreted in accordance with the laws of the State of Minnesota."

Paragraph two of the Bunce *Pierringer* release provides that:

In accepting the sum referred to in paragraph 1, releasors [Bunce] release and discharge that fraction, portion, or percentage of the total cause of action and claim for damages that releasors now has or may hereafter possess against all parties responsible for releasorss [sic] damages which may by trial or other disposition, be determined to be the sum of the fractions, portions, or percentage of causal conduct for which releasees [respondent] are found to be liable to releasors as a consequence of the accident.

■ In accordance with this *Pierringer* release and the applicable caselaw analyzing *Pierringer* releases, respondent paid only its fair share of common liability to Bunce. It is settled law that a claim for contribution does not accrue or mature until the person entitled to the contribution has sustained damage by paying more than his fair share of the joint obligation. *Calder v. City of Crystal*, 318 N.W.2d 838, 841 (Minn.1982) (quoting *Grothe v. Shaffer*, 305 Minn. 17, 23–24, 232 N.W.2d 227, 232 (1975)). Under the standard *Pierringer* agreement analysis, respondent cannot pursue any claims now for contribution and indemnity against defendants and, in this case, non-settling third-party defendants.

Respondent acknowledges that if the agreement was a standard *Pierringer* agreement, respondent would lose on the merits. But respondent argues that it can proceed with its claims for contribution and indemnity because the *Pierringer* release entered into here is a "modified" *Pierringer* agreement. Respondent points to paragraph five, which purports to reserve respondents contribution claims against appellants.

Paragraph five of the Bunce *Pierringer* release provides:

This release is intended to release only [Bunces] claim against [respondent]. [Bunce] expressly reserve[s] the balance of the whole cause of action or any other claim of whatever kind or nature not released which [Bunce] may have or hereafter have against any other persons or entities arising out of the above-described dispute. It is also specifically agreed that [respondent] reserve all claims [respondent] may have for contribution, indemnity, or subrogation against other persons or entities who may be found liable to [Bunce], or who may be jointly or severally liable to [Bunce] with [respondent].

We simply conclude that respondent and Bunce cannot, for their own self-interest, rewrite *Pierringer/Frey* law and make appellants, non-signatories to the A.P.I./Bunce release, bound by it.

To finish off the inescapable conclusion that respondents, who drafted the document, knew all along that it was a *Pierringer* release (and wanted it to be that) protecting them from other possible third-parties/cross-claims, paragraph 7 unambiguously states that the release shall have the same effect as the releases described in *Pierringer* and *Frey.* No one made a mistake here. Respondent crafted its own legal theory to attempt to build in a chance to recoup more money, while remaining absolutely immune from having to pay anybody one dollar more than it paid Bunce, the original plaintiff. Under *Pierringer/Frey,* it just cant be done.

## II.

■ Respondent argues that because Bunce chose not to pursue direct claims against third-party defendants (appellants), Bunce is now precluded from pursuing those claims under the doctrine of claim preclusion and, thus, since appellants are not liable from suit by Bunce, they equitably remain fair game for contribution and indemnity claims by A.P.I., a direct defendant and a third-party plaintiff. We disagree. The *Pierringer/Frey* shadow is a large one. First, as noted, in paragraph five of the release, Bunce specifically reserved claims against nonsettling defendants.

■ One of the "basic elements" of a standard *Pierringer* release is that it does reserve the remainder of the plaintiff's causes of action against the nonsettling parties. *Frey,* 269 N.W.2d at 920 n. 1. Parties not released by a plaintiff's *Pierringer* release remain jointly and severally liable to the plaintiff. *See Hosley v. Armstrong Cork Co.,* 383 N.W.2d 289, 292 (Minn.1986) (stating that *Pierringer* releases reserve "the plaintiff's right to maintain a cause of action against any nonsettling defendant, but releases from

liability any defendant who is a party to the settlement agreement"). Appellants remain potentially liable to Bunce.

Bunce's death, certainly untimely and not in contemplation by any of the parties, does not eradicate *Pierringer/Frey.* Appellants correctly argue that the district court erred in allowing respondent to proceed with its contribution and indemnity claims on the theory that all possible claims against appellants have disappeared. Bunce's next of kin may have a wrongful death action against appellants. We are not asked to decide today whether they do or they don't. We can only note that no court of law has said that they do not. If Bunce's next of kin bring a wrongful death action(s), then those defendants are free to implead A.P.I. for contribution and/or indemnity. The first thing A.P.I. will say to Bunce's next of kin is that they are estopped from collecting any money from A.P.I. because A.P.I. will insist that it settled all of its differences relating to his injuries directly with Bunce while he was alive. A.P.I. will argue that Bunce's death now from those same injuries does not affect the previous full and final settlement. In that argument, respondent would be correct.

The *Pierringer* agreement expressly reserved Bunce's potential claims against appellants. Appellants' attorneys are correct that their clients still have possible legal exposure. Bunce's next of kin have not yet brought a wrongful death action against appellants nor has any court said that, as a matter of law, they cannot. A wrongful death action would potentially involve Bunce's next of kin and appellants, but not respondent because of respondent's carefully drafted *Pierringer* release. That *Pierringer* release both forevermore protects respondent, and forevermore keeps respondent from new contribution and indemnity rights against appellants.

## DECISION

Based on the plain language of the Bunce *Pierringer* release, the release was to be construed as a standard *Pierringer* release. Under the Bunce *Pierringer* release, respondent did not pay more than its fair share of common liability. Respondent is protected from future monetary claims by Bunce and/or his next of kin, and/or cross-claims/third-party claims by nonsettling defendants and potential (by definition non-settling) defendants. Bunce reserved potential claims against appellants, so appellants are entitled to the protection of *Pierringer/Frey*.

Accordingly, we conclude that respondent, having signed a *Pierringer* release, cannot pursue claims for contribution and indemnity against appellants.

**Reversed.**