**Elizabeth A. SILER, as Personal Representative of the Estate of Donald Siverling, and as Trustee of the Trust Agreement dated December 4, 1996, amended on July, 1997, Plaintiff,**

v.

**NORTHERN TRUST COMPANY, INC., Defendant.**

**No. 99 C 4435.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 3, 2000.

Robert A. Shipley, Franklin & Shipley, Ltd., Chicago, IL, for plaintiff.

Pamela Lee Peters, Chicago, IL, Jeffrey R. Ansel, Winthrop & Weinstine, P.A., St. Paul, MN, Michael Gerard Bruton, Price, Tunney, Reiter & Bruton, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

CASTILLO,[1] District Judge.

Ms. Siler sues the Northern Trust Company on behalf of Donald Siverling's Es-

---

1. This case was originally assigned to Judge Ann Williams who recently received confirmation of her appointment to the Seventh

tate and a trust established by Mr. Siverling. Ms. Siler, the payee on a check made out to the Siverling trust, alleges one count of conversion against Northern Trust, the drawee and payor of that check. Northern Trust immediately tendered its defense to the First State Bank of Eden Prairie ("State Bank"), the collecting and depositary bank, which now seeks summary judgment.

State Bank maintains that this lawsuit is circuitous. In a settlement agreement to a separate action, Ms. Siler agreed to indemnify State Bank against any claims arising from the Siverling Trust check. If Ms. Siler succeeds in this case, state law dictates that State Bank would be liable to Northern Trust for the entire award: according to the terms of the settlement agreement, Ms. Siler must then indemnify State Bank for that amount. In other words, even if Ms. Siler wins this lawsuit she could collect only from herself. We agree and grant judgment in favor of Northern Trust.

## FACTS

Prior to his death, Mr. Siverling established a trust with Ms. Siler as the trustee. In October 1997, Mr. Siverling died and a Minnesota court appointed Ms. Siler representative of his estate. Ms Siler retained an attorney, Peter Orlins, to assist with the administration and closing of Mr. Siverling's estate. Orlins, apparently without authorization, sold some stock owned by the trust, and received a check for $292,097.74, drawn from an account at Northern Trust and payable to "Elizabeth Siler TTEE Donald J. Siverling Trust ... c/o Orlins Law Office." (R. 7, State Bank Mot. Ex. A, Check No. 300003182.) Orlins forged an endorsement and deposited the check into his law office account at State Bank.

From this point on, the record, which is never clear, becomes particularly oblique. For example, the parties do not disclose what became of the money, or even whether State Bank presented the draft to

Northern Trust and received payment. In any event, we assume that Orlins absconded with the money withdrawn from his law office account at State Bank and that Northern Trust honored the check after State Bank made presentment.

Also missing from the record is any mention of the proceedings giving rise to the all-important settlement agreement. Instead, all that is revealed is that on March 31, 1999, Ms. Siler settled her (unidentified) claim against State Bank "in accordance with and with the same effect as the release used in *P[ie]rr[i]nger v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963) and its progeny, including *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978) and *Rambaum v. Swisher*, 435 N.W.2d 19 (Minn.1989)." (R. 7, State Bank Mot. Ex. C, Settlement Agreement preamble.)

The terms of the settlement agreement, however, are clear. In exchange for $12,500, Ms. Siler agreed to release her claim against State Bank. (*Id.*) She also agreed "to indemnify and save harmless the Bank from any claim [f]or contribution, indemnity or subrogation made or to be made by any other persons or entities who may be at fault and share responsibility for the damages and injuries incurred by Siler as a result of Orlins' misconduct." (*Id.* at ¶ 5.) Ms. Siler explicitly reserved any potential causes of action against others and State Bank agreed to cooperate in any such litigation. (*Id.* at ¶¶ 2, 3.) Finally, the settlement agreement is governed by Minnesota law. (*Id.* at ¶ 10.)

Ms. Siler then filed this lawsuit against Northern Trust, in which she alleges that Northern Trust is guilty of conversion. Specifically, she claims that Northern Trust improperly honored the falsely endorsed check drawn on one of its accounts and now must pay her, the legitimate payee of that check. (R. 1, Compl. at ¶¶ 9, 10, 12, 24.) Pursuant to U.C.C. § 3–119, Northern Trust sent a letter to State Bank tendering defense of this lawsuit. In support of the tender, Northern Trust noted

Circuit. The case was reassigned to this Court on December 15, 1999.

that, "[a]s the depositary bank with respect to the Subject Check, [State Bank] is answerable over to Northern Trust for any liabilities Northern Trust may have in this matter, under the warranty provisions of the Uniform Commercial Code, Sections 3–417 and 4–208." (R. 7, State Bank Mot. Ex. B, Letter from Northern Trust to State Bank of Aug. 12, 1999, at 1.) Northern Trust warned that, even if State Bank decided not to participate in the lawsuit, "it will be bound by any determination of fact binding on Northern Trust." (*Id.* at 2.) State Bank accepted the tender and filed this motion to dismiss or, in the alternative, for summary judgment.[2] (R. 7, State Bank Mot.)

In its motion, State Bank argues that the case should be dismissed, or summary judgment entered against Ms. Siler, because the lawsuit is circuitous and, therefore, futile. Specifically, even if Ms. Siler wins against Northern Trust, under the U.C.C., State Bank would be liable for the award. Further, according to the settlement agreement, Ms. Siler would be liable to State Bank for its payment to Northern Trust because that payment would satisfy an indemnity claim made by an entity who was at fault for injuries incurred by Ms. Siler as a result of Orlins' misconduct. In other words, State Bank's potential liability to Northern Trust falls within the precise language of Ms. Siler's agreement to indemnify State Bank. Ms. Siler responds that the settlement agreement is inapplicable to this action.

## ANALYSIS

State Bank styles its motion as brought under either Federal Rule of Civil Procedure 12(b)(6) or Rule 56(c). Because the motion relies on matters outside the complaint, the proper vehicle is summary judg-

ment. We proceed to decide the summary judgment motion because Ms. Siler has had a fair opportunity to submit evidence in support of her position, has submitted such evidence, argues her position under the summary judgment standards, and does not complain that more discovery is necessary. The issues presented here are purely legal; therefore, we grant the motion only if Northern Trust and State Bank are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We now turn to the question of whether this lawsuit is circuitous.

■ "A circuitry of obligation will defeat a plaintiff's claim as a matter of law. A circuitry of obligation is created when, by virtue of pre-existing indemnity agreements or obligations, the plaintiff is in effect obligated to indemnify the defendant for claims including the plaintiff's own claim." *National Hydro Sys. v. M.A. Mortenson Co.*, 529 N.W.2d 690, 693 (Minn.1995).[3] Thus, we must determine whether the *Pierringer* release in the settlement agreement constitutes a pre-existing indemnity agreement in which Ms. Siler agreed to indemnify State Bank against paying the potential verdict in this case against Northern Trust.

■ Before turning to the specifics of this case, we believe a short discussion of *Pierringer* releases would be helpful. Only two states, Wisconsin and Minnesota, have judicially ratified the use of *Pierringer* releases, so named after *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963) (ratifying use of such releases in Wisconsin). *See Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978) (ratifying use of *Pierringer* releases in Minnesota). Essentially, a *Pierringer* release allows for piecemeal settlement of multi-defendant

2. State Bank's participation raises the question of this Court's jurisdiction under 28 U.S.C. § 1332. Both Ms. Siler and State Bank are Minnesota citizens; thus, if State Bank is a party to this lawsuit, diversity of citizenship does not exist among the parties. Neither side addresses the issue and we lack the necessary information to resolve the ques-

tion. Thus, we proceed to decide the question raised by State Bank's motion.

3. The parties appear to agree that Minnesota law governs this diversity case by relying almost exclusively on cases decided by Minnesota state courts.

lawsuits; its elements are (1) the total release of the settling defendant by the plaintiff, (2) the plaintiff's express reservation of claims against nonsettling defendants, and (3) the plaintiff's agreement to indemnify the settling defendant against claims for contribution or indemnification. *See, e.g., Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1010–11 (8th Cir.1990) (listing necessary terms of *Pierringer* release); *Rambaum v. Swisher*, 435 N.W.2d 19, 22 (Minn.1989) (same). In this way, a plaintiff may settle its case with fewer than all of the defendants without releasing its claims against the nonsettling defendants; the settling defendants are not subject to claims by the nonsettling defendants; and nonsettling defendants get their day in court and pay no more than their fair share of the verdict. *See Frey*, 269 N.W.2d at 921–22; *see also* Peter B. Knapp, *Keeping the* Pierringer *Promise: Fair Settlements and Fair Trials*, 20 Wm. Mitchell L.Rev. 1, 13 (1994).

That *Pierringer* releases may apply to indemnity claims (as well as to claims for contribution) by nonsettling defendants against settling defendants is well established; whether they do is a matter of contract interpretation. *Alumax Mill Prods.*, 912 F.2d at 1011 ("Having decided that the *Pierringer* release can be applied to cross-claims for indemnification, we must determine the scope of this settlement agreement."); *Frey*, 269 N.W.2d at 923 (the "terms of the release" determine whether "the plaintiff has agreed to indemnify the settling defendant against all possible cross-claims of the nonsettling parties."). Here, the agreement is clear: Ms. Siler agreed to "indemnify . . . the Bank from any claim [f]or . . . indemnity." (R.7, State Bank Mot. Ex. C, Settlement Agreement at ¶ 5.) Thus, Ms. Siler's argu-

4. Although Minnesota law clearly governs interpretation of the settlement agreement, it is unclear what law governs the characterization of Northern Trust's claim against State Bank; Minnesota and Illinois are our two choices. The question, however, is academic because both states have adopted the U.C.C. We refer to the U.C.C. sections for ease.

ment that the release applies only to contribution claims is unavailing.

The real question is whether the *Pierringer* release applies to Northern Trust's claim against State Bank. *Compare National Hydro Sys.*, 529 N.W.2d at 693 ("In the present case, circuity of obligation exists only if the . . . indemnity provision is enforceable as to [the plaintiff's] claim [against the remaining defendant].."). Specifically, we must decide whether Northern Trust's claim is for "contribution, indemnity or subrogation." (R. 7, State Bank Ex. C, Settlement Agreement at ¶ 5.)

Northern Trust tendered its defense to State Bank on the ground that State Bank would be liable to it under U.C.C. §§ 4–208 and 3–417.[4] Sections 4–208 and 3–417 together delineate automatic presentment warranties for checks: when a depositary bank[5] presents a check for payment, it guarantees that it is entitled to enforce the check on behalf of another who is entitled to enforce the check. In other words, it guarantees the endorsement. If the endorsement is actually unauthorized, the depositary bank is liable to the drawee, or payor bank.[6] Presentment warranties are imposed because depositary banks have the best opportunity to verify their customers' endorsements. *See, e.g., Geldert v. American Nat'l Bank*, 506 N.W.2d 22, 28 (Minn.Ct.App.1993) ("This rule places the loss upon the bank that dealt with the wrongdoer and is best able to prevent conversion by carefully checking endorsements."). Here, State Bank, the depositary bank, received the check from Orlins and presented it for payment to Northern Trust, the drawee, thereby warranting the unauthorized endorsement.

5. A depositary bank is "the first bank to take an item [*i.e.,* a check]." U.C.C. § 4–105(2).

6. A drawee is "a person ordered in a draft to make payment." U.C.C. § 4–104(8). A payor bank is defined as a drawee. U.C.C. § 4–105(3) Here, it means the institution that held the account upon which the check was written.

So, Northern Trust's potential action against State Bank is for breach of warranty and is therefore a claim for indemnity. The definition of "warranty" is a "promise that a proposition of fact is true .... [that] amounts to [a] promise to indemnify promisee for any loss of the fact warranted proves untrue." Black's Law Dict. 1586 (6th ed.1990). Furthermore, Minnesota courts characterize claims for breach of presentment warranty as indemnification claims. *See, e.g., E.S.P., Inc. v. Midway Nat'l Bank of St. Paul,* 447 N.W.2d 882, 885 (Minn.1989) ("[U]nder the Uniform Commercial Code Midway [the drawee] is entitled to be indemnified [by the depositary bank] for any loss it sustains,"); *Geldert,* 506 N.W.2d at 29 ("A payor bank's breach of warranty claim against a depositary or collecting bank is for indemnification.").[7]

For these reasons, we conclude that Northern Trust's claim against State Bank is for indemnity. Furthermore, Ms. Siler's present action is for damages "incurred by Siler as a result of Orlins' misconduct." (R. 7, State Bank Mot. Ex. C, Settlement Agreement at ¶ 5.) The case fits squarely within the language of the *Pierringer* release: Ms. Siler has agreed to indemnify State Bank against precisely the claim that Northern Bank has brought against State Bank. Consequently, even if Ms. Siler wins here, she ultimately could collect only from herself. The *Pierringer* release has resulted in a circuity of obligation that defeats Ms. Siler's present lawsuit as a matter of law.

Ms. Siler attempts to confuse the issue by focusing on her theory of liability against Northern Trust and arguing that she did not indemnify State Bank against claims for conversion. Her claim against Northern Trust, however, is irrelevant under the *Pierringer* release; there she agreed to indemnify State Bank for claims against State Bank. Thus, it is Northern Trust's theory of liability against State Bank that matters.

■ Finally, Ms. Siler claims there is a question of fact pertaining to the intended meaning of the settlement agreement. She maintains that she did not intend to lose her claim against Northern Trust by indemnifying State Bank. But it is axiomatic that a party to a contract cannot create an ambiguity in the contract by claiming she did not intend the consequences of its objectively plain meaning.[8] *See, e.g., Barry v. Barry,* 172 F.3d 1011, 1015 (8th Cir.1999) (applying Minnesota law).

## CONCLUSION

This lawsuit is futile: even if Ms. Siler wins her case against Northern Trust, her pre-existing indemnity agreement with State Bank means she could recover an award only from herself. Therefore, we grant the defendant's motion for summary judgment, (R. 7–2), and instruct the Clerk of the Court to enter judgment pursuant to Federal Rule of Civil Procedure 58. We deny the defendant's motion to dismiss, (R. 7–1), as moot.

7. *See also King v. White,* 265 Kan. 627, 962 P.2d 475, 479 (1998) ("[T]he insurance companies were entitled to indemnity from [a depositary bank] pursuant to [U.C.C. § 3–417], the presentment warranty statute."); *Great American Ins. Cos. v. American State Bank of Dickinson,* 385 N.W.2d 460, 464 (N.D.1986) ("If [the plaintiff] had proceeded directly against Great American, Great American, as drawee, could have brought an action for indemnity against American State Bank, as collecting bank, for breach of presentment warranties.").

8. Ms. Siler presents several other arguments; however, the arguments are frivolous and we need not address them. For example, there is no question that State Bank has standing, or that we must proceed with a futile lawsuit on the off-chance that Northern Trust won't press its claim against State Bank (even though it tendered its defense to State Bank on that very ground).