John A. GROSCHOPF and Sue Groschopf, Plaintiffs,

v.

HEALTH INSURANCE RISK SHARING PLAN, Involuntary Plaintiff,

v.

The Sportsman's Guide, Inc., Northern Tool & Equipment Catalog Company, Inc., Northern Tool & Equipment Catalog Company, Inc. d/b/a The Sportsman's Guide, Inc., ABC Insurance Company, and DEF Insurance Company, Defendants.

Case No. 14–CV–51–JPS.

United States District Court, E.D. Wisconsin.

Signed Dec. 4, 2014.

Eric M. Knobloch, Steven D. Gruber, & Timothy S. Knurr, Gruber Law Offices LLC, Milwaukee, WI, for Plaintiffs.

Matthew Robert Falk, Falk Legal Group LLC, Milwaukee, WI, for Involuntary Plaintiff.

Patrick J. Rooney, Peter A. Carlson, & Donald Chance Mark, Jr., Fafinski Mark & Johnson PA, Eden Prairie, MN, for Defendants.

## ORDER

J.P. STADTMUELLER, District Judge.

The plaintiffs, John A. Groschopf and Sue Groschopf, initiated this suit on December 18, 2013, in the Milwaukee County Circuit Court. On January 14, 2014, the defendants, Northern Tool & Equipment Catalog Company, Inc. ("Northern Tool"), Northern Tool & Equipment Catalog, Company, Inc., d/b/a The Sportsman's Guide, Inc., The Sportsman's Guide, Inc. ("TSG"), Smith Industries, LLC ("Smith Industries") and Gemini Insurance Company ("Gemini Insurance"), removed the suit to this Court where it was randomly assigned to this branch. (Docket # 1). The plaintiffs assert both negligence and strict liability claims against the defendants for a range of alleged deficiencies in the design,

warnings, and instructions associated with the product Sure Shot. (Docket # 1–1, ¶¶ 14–31). Several motions for summary judgment have been filed and fully briefed in this matter. (Docket # 28, # 35, # 55, and # 121). On December 1, 2014, defendants filed a Motion to Amend/Correct the Scheduling Order (Docket # 120) along with a Motion for Summary Judgment Based on the Plaintiffs' *Pierringer* Release [1] of Smith Industries and Gemini Insurance (Docket # 121), which are now fully briefed and the Court will address in detail below.[2]

As an initial matter, the Court notes that on November 4, 2014, the parties submitted a voluntary stipulation of dismissal as to defendants Smith Industries and Gemini Insurance. As such the Court adopted the parties' stipulation and dismissed Smith Industries and Gemini Insurance on November 10, 2014. (Docket # 98).

Secondly, the defendants argue that Northern Tool should be dismissed as an improper party. The plaintiffs concede this argument in their Opposition and concur that Northern Tool should be dismissed, with prejudice, as an improper party. (Docket # 37 at 2 n. 1). Thus, the Court will dismiss Northern Tool from this action.

Finally, the timeliness of defendants' Motion to Amend/Correct the Scheduling Order is at issue. The deadline for summary judgment in this case was September 15, 2014. (Docket # 22). The present motion for summary judgment was filed over two months late and only two weeks before trial. Ordinarily, the Court would be loathe to consider a motion filed so close to trial. Nonetheless, in this instance the Court will consider the motion for two reasons. First, the issue did not present itself until the defendants received notice of the *Pierringer* Release on October 16, 2014, well after the deadline for summary judgment had passed, and the defendants cannot be faulted for not raising it earlier. Second, and most importantly, in the event that defendants' Motion for Summary Judgment has merit, the continuation of the lawsuit would be futile, such that the plaintiffs could only recover an award from themselves. The Court declines to waste precious judicial resources on a futile lawsuit. Finding it appropriate to grant the defendants' Motion for Summary Judgment (Docket # 121), the Court will deny the defendants' Motion to Amend/Correct the Scheduling Order (Docket # 120) as moot.

## 1. FACTUAL BACKGROUND [3]

This case arises out of an incident that occurred on August 24, 2013. Plaintiff John Groschopf ("Groschopf") alleges he suffered an injury when a product he purchased from defendant TSG in 2011, called Sure Shot Exploding Rifle Targets ("Sure Shot"), exploded while he was using it. As a result of the explosion, Groschopf alleges

---

**1.** The Court will discuss *Pierringer* Releases in detail below.

**2.** Although the plaintiffs' Brief in Opposition ("Opposition") is captioned only as an Opposition to the Motion to Amend/Correct the Scheduling Order (Docket # 120), the content of the Opposition addresses the Motion to Amend/ Correct as well as the substantive issues presented in the Motion for Summary Judgment (Docket # 121). Counsel for the plaintiffs indicated to the Court that the mat-

ter was indeed fully briefed and ready for disposition.

**3.** In the interest of clarity, the Court will discuss only the facts pertinent to the present Motion for Summary Judgment. (Docket # 121). The specific facts related to the product Sure Shot and the plaintiffs' injury on August 24, 2013, are not relevant to the issue at hand.

catastrophic physical and emotional injuries. (Groschopf Aff. at 4, ¶ 12). Defendant TSG is an online and catalog retailer of outdoor sports products that has been in existence since 1997. (Glowaski Decl. at ¶ 2). Smith Industries manufactured Sure Shot and Gemini Insurance insured Smith Industries. (Smith Industries and Gemini Insurance Answer and Affirmative Defenses) (Docket # 9).

Defendant TSG began selling Sure Shot in August 2010 after it entered into a vendor's agreement with Smith Industries dated August 16, 2010 ("Vendor's Agreement"). (Smith Dep. at 197:12–19; Meyer Dep. at 25:6–20). The Vendor's Agreement specifically states:

> We agree to indemnify, defend, and hold [TSG] harmless from any action, claim, cost liabilities, damages, expenses, and demands arising out of any claim relating to our products or the breach of the terms set forth in this [Vendor's Agreement]. We accept that such indemnification costs will be charged back to us upon notification from [TSG] of the amounts and circumstances giving rise to the indemnification.

(Vendor's Agreement, Docket # 33–2). The owner of Smith Industries, Matthew Smith, acknowledged in a deposition that the Vendor's Agreement is the operative, and only, agreement between Smith Industries and defendant TSG. (Smith Dep. at 197:12–19; Docket # 31–5).

On October 14, 2014, the plaintiffs executed a *Pierringer* release with defendants Smith Industries and Gemini Insurance. (Rooney Decl. ¶ 2, Ex. A; Docket # 123). Pursuant to the release, Smith Industries and Gemini Insurance agreed to pay the plaintiffs $1,000,000.00 in exchange for the dismissal with prejudice of all claims against them and a full release and indemnification from the plaintiffs. (*Id.*) The agreement stated as follows:

> The Groschopfs indemnify and hold harmless [Smith Industries] against any judgment that any person or party, including any subrogated party, would obtain against [Smith Industries] for contribution, indemnity, intentional conduct, statutory liability, or other liability caused by or otherwise arising out of the explosion which occurred on August 24, 2013, while Plaintiff John Groschopf was mixing binary exploding targets manufactured by Smith [Industries].

(*Id.*)

On November 4, 2014, the parties filed a joint stipulation of dismissal dismissing all claims against Smith Industries and Gemini Insurance with prejudice and without costs. (Docket # 92). Defendant TSG specifically reserved "all of [their] rights in accordance with *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963) and *Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81, 244 Wis.2d 758, 628 N.W.2d 833." (*Id.* at 2). On November 10, 2014, the Court adopted the stipulation and dismissed Smith Industries and Gemini Insurance with prejudice and without costs. (Docket # 98).

## 2. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the grounds that the plaintiffs' *Pierringer* Release with Smith Industries creates a "circuity of obligation" which necessitates the dismissal of all claims against defendant TSG.

Summary judgment is appropriate where the "pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Wis. Alumni Research Found. v. Xenon Pharms., Inc.*, 591 F.3d

876, 882 (7th Cir.2010). In ruling on a summary judgment motion, the court must view the evidence, including all inferences reasonably drawn from such evidence, in the light most favorable to the non-moving party. *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir.2007).

### 2.1 "Circuity of Obligation"

■ Before turning to the specifics of this case, the Court believes a short discussion of *Pierringer* releases would be helpful. Only two states, Wisconsin and Minnesota, have judicially ratified the use of *Pierringer* releases, so named after *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963) (ratifying use of such releases in Wisconsin). *See Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978) (ratifying use of *Pierringer* releases in Minnesota). Essentially, a *Pierringer* release allows for piecemeal settlement of multidefendant lawsuits; its elements are: (1) the total release of the settling defendant by the plaintiff; (2) the plaintiff's express reservation of claims against nonsettling defendants; and (3) the plaintiff's agreement to indemnify the settling defendant against claims for contribution or indemnification. *See, e.g., Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1010–11 (8th Cir.1990) (listing necessary terms of *Pierringer* release); *Rambaum v. Swisher*, 435 N.W.2d 19, 22 (Minn.1989) (same). In this way, a plaintiff may settle its case with fewer than all of the defendants without releasing its claims against the nonsettling defendants; the settling defendants are not subject to claims by the nonsettling defendants; and nonsettling defendants get their day in court and pay no more than their fair share of the verdict. *See Frey*, 269 N.W.2d at 921–22; *see also* Peter B. Knapp, *Keeping the Pierringer Promise:*

*Fair Settlements and Fair Trials*, 20 WM. MITCHELL L.REV. 1, 13 (1994).

■ They can, however, occasionally create headaches for plaintiffs where they create a so called "circuity of obligation." In fact, a finding of circuity of obligation will defeat a plaintiff's claims as a matter of law. "A circuity of obligation is created when, by virtue of pre-existing indemnity agreements or obligations, the plaintiff is in effect obligated to indemnify the defendant for claims including the plaintiff's own claim." *Siler v. N. Trust Co.*, 80 F.Supp.2d 906, 908 (N.D.Ill.2000); *accord Hoffmann v. Wiltscheck*, 411 N.W.2d 923, 926 (Minn.App.1987). In such a situation, the plaintiff's right to recover damages from the defendant is offset by the plaintiff's obligation to repay the same damages to the defendant. *Hoffmann*, 411 N.W.2d at 926. "Under these circumstances, 'there is no point in going through the circuity of ordering a judgment' against the nonsettling defendant only to have the plaintiff ultimately satisfy the judgment itself." *Alumax*, 912 F.2d at 1010 (quoting *Fleming v. Threshermen's Mut. Ins. Co.*, 131 Wis.2d 123, 388 N.W.2d 908 (1986)).

The case of *Siler v. Northern Trust* is illustrative. *Siler*, 80 F.Supp.2d at 907. In *Siler*, an attorney representing a trust received a check for the sale of stock owned by the trust. *Id.* Rather than deposit the funds into the trust's account, however, the attorney falsely endorsed the check and deposited the funds in his own account at State Bank. *Id.* After learning about the attorney's actions, the trustee (Siler) brought claims against Northern Trust, the payor bank, for conversion; the trustee sought to recover trust funds misappropriated by the attorney. *Id.* Prior to commencing her action against Northern Trust, however, Siler also entered into a *Pierringer* agreement with State Bank. *Id.* Because, under the UCC, depository banks

are obligated by law to indemnify payor banks, Northern Trust argued that the *Pierringer* agreement voluntarily entered into by the plaintiff created a circuitry of obligation which obligated dismissal of the action. *Id.* at 907–08. The district court agreed, finding as follows:

> This lawsuit is futile: even if Ms. Siler wins her case against Northern Trust, her pre-existing [*Pierringer*] indemnity agreement with State Bank means she could recover an award only from herself.

*Id.* at 910.

### 2.2 Analysis

■ Here, defendant TSG argues that if a jury returns a verdict in favor of the plaintiffs, defendant TSG will have a claim for contribution or indemnity against Smith Industries pursuant to the Vendor's Agreement. Accordingly, a circuity of obligation exists, defeating the present allegations against defendant TSG, because the plaintiffs have agreed to indemnify and hold Smith Industries harmless against any claim brought against Smith Industries for contribution or indemnity arising out of the August 24, 2013 incident. In essence, defendants claim that any judgment the plaintiffs might obtain in this action against defendant TSG would ultimately have to be paid by the plaintiffs themselves.

The defendants' Motion for Summary Judgment simply cites to the two indemnification clauses and finds that when combined, they create a circuity of obligation. (Docket # 122 at 7). However, the Court believes a closer examination of the indemnification clauses is required before finding as a matter of law that such a circuity of obligation exists. It is undisputed that the *Pierringer* Release will require the plaintiffs to indemnify and hold Smith Industries harmless for contribution or in-

demnity arising out of the August 24, 2013 incident. Thus, the real issue at hand is whether the indemnity provision of the Vendor's Agreement is enforceable as to the plaintiffs' claims. *See Nat'l Hydro Sys. v. Mortenson Co.*, 529 N.W.2d 690, 693 (Minn.1995) ("In the present case, circuity of obligation exists only if the ... indemnity provision is enforceable as to [the plaintiff's] claim [against the remaining defendant].").

As stated above, the plaintiffs' claims against defendant TSG include both negligence and strict liability claims for a range of alleged deficiencies in the design, warnings, and instructions associated with Sure Shot. (Docket # 1–1, ¶¶ 14–31). The indemnification clause of the Vendor's Agreement provides that Smith Industries will indemnify and hold defendant TSG harmless for "any action, claim, cost liabilities, damages, expenses, and demands arising out of any claim relating to our products ..." (Vendor's Agreement, Docket # 33–2). There is no question that both the strict liability and negligence claims against defendant TSG arose from a product of Smith Industries, namely the product Sure Shot. The only question is whether an indemnification agreement requiring a party to indemnify another party for that party's own negligence is enforceable under Wisconsin Law.

■ Generally, contracts providing for indemnification in the case of the indemnitee's negligence are considered valid and not contrary to public policy. *Mustas v. Inland Constr. Inc.*, 19 Wis.2d 194, 120 N.W.2d 95, 101 (1963); *Hartford Accident & Indem. Co. v. Worden–Allen Co.*, 238 Wis. 124, 297 N.W. 436, 440 (1941). However, many states, including Wisconsin, have found that indemnity agreements are to be strictly construed when the indemnitee, here defendant TSG, seeks to be indemnified for its own negligence. *See, e.g.,*

*Nat'l Hydro Sys.,* 529 N.W.2d at 694; *Dykstra v. Arthur G. McKee,* 100 Wis.2d 120, 301 N.W.2d 201 (1981); *Webster v. Klug & Smith,* 81 Wis.2d 334, 340, 260 N.W.2d 686 (1978). The plaintiffs argue, without citing any case law, that because "language in the Vendor's Agreement purporting to give rise to indemnification says absolutely nothing about Smith agreeing to indemnify TSG for its own negligence [and thus,] according to Wisconsin law, it is void and unenforceable." (Pls' Oppos. at 2–3; Docket # 124). Although the Court agrees with the plaintiffs that the indemnification agreement must be strictly construed, the mere absence of the negligence language does not end its analysis; the Court must "determine whether it [was] indeed the intent of the parties that a negligent indemnitee be indemnified for its own negligent conduct." *See Dykstra,* 100 Wis.2d at 125, 301 N.W.2d 201. In *Herchelroth v. Mahar,* 36 Wis.2d 140, 153 N.W.2d 6 (1967), the Wisconsin Supreme Court construed an indemnification agreement drawn in general language between a lessor and lessee as intending to protect the indemnitee for its own negligent acts. The court found that it was clear from the record, in view of the relationship of the parties, that no other purpose could be served by the agreement other than to protect the indemnitee's responsibility for his negligent acts. *Herchelroth,* 153 N.W.2d at 9.

Even applying the rules of strict construction, the Court finds that, as in *Herchelroth,* the parties intended that defendant TSG be indemnified for negligence claims such as the failure to warn and failure to investigate. The negligence claims against defendant TSG arise directly as a result of the negligence of Smith Industries, the indemnitor in this case. In the Vendor's Agreement, Smith Industries represented and warranted as follows:

> We have properly analyzed the merchandise to determine if [the] U.S. Department of Transportation hazardous materials regulations apply and we will comply with all requirements for those regulations, including labeling and packaging obligations. We will notify [TSG] whenever the merchandise requires special handling procedures or safety precautions by its employees or customers.

(Smith Dep. at 201:14–203:16; Carlson Decl. at ¶ 3, Ex. B, Vendor's Agreement at 3). Defendant TSG relied on this representation and did not participate in the drafting of any of the directions or warnings that came with the product. *(See* Smith Dep. at 199:9–200:18; Glowaski Decl. at ¶ 5). This representation, combined with the indemnification clause, more than simply suggests that the parties intended that TSG be held harmless for any negligence claims related to the warning labels. As such, the Court finds that the indemnity provision of the Vendor's Agreement is enforceable as to all the plaintiffs' claims against TSG. Thus, a circuity of obligation exists between the parties and all claims against TSG must be dismissed.[4]

### 3. CONCLUSION

As discussed above, the Court finds that a circuity of obligation exists between the parties that defeats the plaintiffs' present

---

4. The plaintiffs exclaim, without any legal support or analysis, that a "huge and vital distinction" exists between *Siler* and this case because "namely, in *Siler* a cross-claim was filed!" (Pls' Opp. at 3; Docket # 124) (emphasis in original). The plaintiffs argue that they "relied on the fact [that there was no cross-claim filed] when the release was executed." *(Id.)* The Court, however, does not find this distinction to be of meaningful consequence. With or without a cross-claim, the defendant TSG may still pursue its right to indemnification under the Vendor's Agreement.

lawsuit as a matter of law. As such, the defendants' Motion for Summary Judgment (Docket # 121) will be granted and all claims against those defendants shall be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to the stipulation of the parties (Docket # 37 at 2 n. 1), defendants Northern Tool and Equipment Catalog Company, Inc., and Northern Tool & Equipment Catalog Company, Inc., d/b/a The Sportsman's Guide, Inc., be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that The Sportsman's Guide, Inc.'s (the only remaining defendant) Motion for Summary Judgment Based on the Plaintiffs' *Pierringer* Release of Defendants Smith Industries and Gemini Insurance (Docket # 121), be and the same is hereby **GRANTED;** and

**IT IS FURTHER ORDERED** that all remaining pending motions (Docket # 27, # 28, # 35, # 55, # 65, # 99, # 100, # 107, # 120, # 129, # 140, # 141, # 142, and # 143) be and the same are hereby **DENIED as moot.**

The Clerk of the Court shall dismiss this action and enter judgment accordingly.